CORSCOT, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 14—November 8, 1922.*

*Criminal law: False pretenses: Elements of offense: Representation as to existing fact: Present or future time: Promise to deliver designated stock: Delivery of other and worthless stock: Reliance by party defrauded.*

1. To constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom made, who relies on such false representation or statement and is actually defrauded by parting with something of value without compensation.
2. Where defendant, who had procured securities from the complaining witness by giving her his note and stock in the M. corporation as security, promised to give her "more of the same stock" as security for the loan of other securities, there was a promise to put up M. stock as collateral, and the inference is irresistible that the complaining witness in parting with her securities did not intend to pass title until the M. stock was delivered.

3. Where the complaining witness surrendered to defendant a bond upon his promise that "I will give you" certain stock as security, and immediately thereafter defendant gave her an envelope containing other and worthless stock, with the remark "The stock is in there," defendant's promise referred to an existing fact and not a future event, since his last quoted remark was equivalent to saying "I am giving you" the certain security mentioned.

4. "Present time" usually means a period of appreciable and generally of some considerable duration within which certain transactions are to take place; and "future time" usually means a period to come after such "present time."

5. Defendant's promise to deliver designated corporate stock as security for a certain bond imported reasonable security, though not naming a particular amount, and was not fulfilled by the delivery of other and worthless stock, especially where the complaining witness was afterwards kept in ignorance of its nature.

6. The evidence in this case is *held* to import reliance by the complaining witness upon false representations of the defendant, where he delivered worthless stock instead of the stock promised in return for the bond and thereafter kept her in ignorance of its nature.

ERROR to review a judgment of the superior court of Dane county: A. C. HOPPMANN, Judge. *Affirmed.*

Plaintiff in error, hereinafter referred to as defendant, was on the 6th day of April, 1921, found guilty by a jury in the superior court of Dane county of obtaining property, to wit, a bond of the value of $1,000 of the Champion Lumber Company of Philadelphia, from one Mary A. Petherick, under false pretenses, in violation of sec. 4423 of the Statutes of Wisconsin, and was thereupon adjudged guilty by the court and sentenced.

Reference is made to this case, reported in 176 Wis. 103, 186 N. W. 179, from which it appears that the exceptions allowed by the trial court under sec. 4720 of the Statutes were overruled by this court.

In November, 1913, the complainant, Mrs. Petherick, and her husband and the defendant lived in adjoining flats in the city of Madison. Mr. Petherick at that time was ill,

and he died on May 11, 1914.   Mrs. Petherick, who was somewhat over the age of sixty years, was childless and had no immediate relatives, and was a plain, ordinary housewife, with a simple, confiding disposition, and with no experience whatever in business affairs.

On or about April 1, 1914, Mr. Petherick was the owner of certain city of Madison bonds of the value of $2,100, which had just matured, and which bonds were kept in his home.   The defendant advised Mrs. Petherick that this was not a safe place to keep the bonds, whereupon they were delivered to him, and he obtained the cash for them and invested the proceeds in one bond of $600 in the Mineral Point Public Service Company and two bonds of the Champion Lumber Company, one for the sum of $500 and the other for the sum of $1,000.   Shortly after this transaction Mr. Petherick died, and at the suggestion of the defendant the latter went with Mrs. Petherick to the Central Wisconsin Trust Company to listen to the reading of the will.   The defendant also assisted Mrs. Petherick in procuring a safety-deposit box at the First National Bank in the city of Madison, and was present when she deposited the bonds above referred to, together with a watch and diamond ring, in such safety box.   The defendant also assisted Mrs. Petherick in the collection of rentals derived from the flat formerly occupied by her and which she had in the meantime subleased, and used the rentals so collected in paying her obligations to her landlord, and the balance he paid to her. from time to time until the lease expired.

On or about the 5th day of April, 1915, the defendant became the owner of one certain stock certificate, being numbered 155, of the Madison Square Company, and shortly thereafter the defendant represented to Mrs. Petherick that the Madison Square Company stock presented a splendid opportunity for an investment and urged her to purchase some of his stock.   Mrs. Petherick and the defendant thereupon went to the First National Bank, where she took there-

from the Mineral Point Public Service Company bond for $600 and the $500 Champion Lumber Company bond and delivered the same to the defendant, who in turn executed to Mrs. Petherick a promissory note for $1,100, due in five years, and bearing interest at the rate of seven per cent. per annum, and to secure such note handed her said certificate No. 155 of the Madison Square Company stock. The defendant paid the interest on this note up to May 15, 1918, but made no further payments on the interest, and the total amount of the principal is still unpaid. On the date of the execution of said $1,100 note the defendant also took from the safety box Mr. Petherick's diamond ring and inquired of Mrs. Petherick whether she desired to sell it. A sale of the ring was thereupon effected for the sum of $200, for which amount defendant executed to her his promissory note, which note thereafter was paid.

In October, 1915, while Mrs. Petherick was performing the functions of a nurse for the widow of the late Mr. Justice BASHFORD, the defendant, after some effort, succeeded in locating Mrs. Petherick's whereabouts and made an appointment with her to meet him at the First National Bank in Madison, he, the said defendant, stating that he had some very important business transaction to discuss with her. On meeting at the bank the defendant told Mrs. Petherick that he had a big deal on and that he needed more money, to which Mrs. Petherick replied: "I haven't any more money." The defendant said: "Yes you have, you have another thousand dollars, and I must have one thousand dollars, and if I don't have it I will lose a lot; I will give you some more of the same stock as security." Thereupon the defendant stated that the Boyd Company would cash the $1,000 Champion Lumber Company bond, and the same was thereupon handed to the defendant for that purpose, with the understanding that the defendant would give her some more of the same stock (meaning the Madison Square Company stock which he had previously

given her) as security.   On the way from the bank to the
Boyd Company Mrs. Petherick stopped in front of the Park
Hotel to talk with a friend, and during such conversation
the defendant attempted to cash the bond at the Boyd Com-
pany, but was unable to do so on account of the absence of
Mr. Boyd.   Upon the defendant's return from the Boyd
Company and on meeting Mrs. Petherick he handed her an
envelope, saying: "The stock and the note are in there," and
he thereupon took out his watch and said: "We have just
about got time to hurry to the bank and get this in the vault
before the bank closes."   Thereupon both the defendant and
Mrs. Petherick hurried to the First National Bank, and,
without opening the envelope, deposited the same in the
deposit box.

Mrs. Petherick did not discover until January, 1916, that
in place of the stock in the Madison Square Company the
defendant had inclosed in the envelope the stock of a certain
corporation known as the Frank Starck Company.   When
Mrs. Petherick thereafter called the defendant's attention
to his failure to provide her with Madison Square Com-
pany stock, he assured her that the stock of the Starck
Company was perfectly all right and was worth par.

From the testimony of one Elwell, a certified public ac-
countant who examined the books of the Starck Com-
pany, it appears that the stock of that company was worth-
less; that the ledger contained but one account, which was
that of the defendant, and that such account was debited
with $1,000 and credited with $240.58, which would leave
a balance of $759.42 due from the defendant to the cor-
poration.   The defendant also claimed that the principal
asset of the Starck Company consisted of a valuable pat-
ent, but Frank A. Starck, the president of the company,
testified that the company never owned any patents and that
it had practically no assets.   On January 1, 1916, the charter
of the Starck Company was forfeited, under the provisions
of sec. 1774a, Stats.

The secretary of the Madison Square Company testified that the defendant was the owner of stock certificate No. 155 for twenty-five shares of the stock of the company, dated April 5, 1915, par value $2,500, and that the defendant never held any other stock in such company, and that the market value of said stock on October 15, 1915, was about $50 per share.

At the time of the trial the defendant was thirty-five years of age and had had twelve years' experience in an abstract office.

For the plaintiff in error there was a brief by *Rufus B. Smith* of Madison and *J. M. Clancey* of Stoughton, and oral argument by *Mr. Smith.*

For the defendant in error there was a brief by the *Attorney General* and *J. F. Baker,* assistant attorney general, and oral argument by *Mr. Baker.*

DOERFLER, J. Defendant's counsel assign as error the refusal of the court, at the close of the state's testimony, to grant defendant's motion to discharge him, and the refusal of the court to grant defendant's motion to set aside the verdict and for a new trial, because (1) the verdict is contrary to law; (2) because it is contrary to the evidence; and (3) because justice has not been done the defendant. The preceding assignments of error will be treated together.

To constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or statement; an actual defrauding; and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained. 25 Corp. Jur. 589.

Mrs. Petherick and defendant were neighbors, living in

adjoining flats, and during the years 1913 and 1914 a close friendship existed between them. The defendant was a man between thirty and thirty-five years of age, in the prime of life, having had years of experience in business affairs. Mrs. Petherick was upwards of sixty years of age, in feeble health; had just lost her aged spouse, and she had no experience in business or business affairs or in making investments. The evidence also discloses that the major portion of the property left by Mr. Petherick, Mrs. Petherick's husband, consisted of $2,100 in municipal securities. By reason of the existing friendship and the confidence inspired thereby, Mrs. Petherick, immediately preceding the death of her husband, permitted the defendant to collect the proceeds of these municipal bonds, which had matured, and to invest them in other securities consisting of one bond of the Mineral Point Public Service Company, of the par value of $600, and two bonds of the Champion Lumber Company, respectively of the par value of $500 and $1,000. The services rendered by the defendant for Mrs. Petherick up to this point concededly were advantageous and beneficial to her. The services thus rendered naturally were intended not only to create and maintain a closer bond of friendship between the parties, but also tended to inspire confidence.

On May 15, 1915, while the defendant was the owner of the stock evidenced by certificate No. 155 of the Madison Square Company, of the par value of $2,500, he endeavored to induce Mrs. Petherick to purchase some of this stock from him. Upon her refusal he procured the Service Company bond and the $500 Champion Lumber Company bond from Mrs. Petherick by giving her his note for the par value of these bonds, payable in five years, with interest at seven per cent., and handed her said certificate No. 155 as security for the note. At or about the time of this transaction the bonds of the Madison Square Company were worth about fifty cents on the dollar. While morally it

may be considered a questionable practice for the defendant, a man in the prime of life and of considerable business experience, to attempt to induce Mrs. Petherick to purchase the stock in the Madison Square Company or to procure from her bonds of the par value of $1,100 upon his promissory note, with the stock in the Madison Square Company as security, nothing of a criminal nature, violative of the statutes on false pretenses, was involved therein.

At the time when the defendant made the appointment to meet Mrs. Petherick at the First National Bank, where she had deposited in a safety-deposit box her securities, Mrs. Petherick was called from the bedside of Mrs. Bashford, whom she was attending as nurse and where the performance of her duties required almost constant attendance. Upon the occasion of her meeting with the defendant pursuant to this appointment he represented to her that he was in great need of money, to which she replied that she had no money, and thereupon the defendant called to her attention the fact, well known to him, that she still had on hand a bond of the Champion Lumber Company of the par value of $1,000, and stated that he could cash this bond at the Boyd Company where it was purchased, and that he would give her more stock of the same company as security. To use the exact language, defendant said: "I will give you some more of the same stock as security." The only stock he had ever given her as security consisted of Madison Square Company stock. By this statement he led Mrs. Petherick to believe that he would secure the loan by putting up as security some more stock of the Madison Square Company. The bond of the Champion Lumber Company was thereupon handed to the defendant with the understanding that he would cash the same and then deliver to her stock in the Madison Square Company as security. The parties left the bank for the purpose of going to the Boyd Company to enable the cashing of the bond and the giving of the promised security to Mrs. Petherick by the

defendant. When the defendant left Mrs. Petherick in front of the Park Hotel it was clearly contemplated that after cashing the bond he would return to her, and in order to complete the transaction would hand her the stock of the Madison Square Company as security. Until the delivery of the security the defendant held the bond or the cash proceeds thereof as the agent of Mrs. Petherick, and pursuant to the understanding between the parties the inference is irresistible that the title to either the bond or the cash would not pass until such security was furnished and delivered. Had the defendant, upon leaving Mrs. Petherick, converted the bond to his own use, or had he cashed the bond and appropriated the money without executing the proposed agreement, he would have been guilty of embezzlement.

Defendant's counsel contend that the statement of the defendant made at the bank, "I will give you some more of the same stock as security," was not a statement with reference to a past or a present fact, but applied strictly to an event which was to transpire in the future, and that for that reason false pretenses cannot be founded upon such statement. While the statement made at the bank, standing alone, unquestionably refers to a future event, nevertheless, considered in connection with the nature of the entire transaction, and in view of his statement when he delivered the envelope, "The stock and the note are in there," the same when properly interpreted can have but one meaning, and that is that when the security was actually delivered it meant "I am giving you some more of the same stock [meaning the Madison Square Company stock] as security." With that interpretation the representation made was with reference to an existing fact, and, if false, constituted a proper foundation upon which could be based the criminal action of false pretenses.

At the time that this statement was made to Mrs. Petherick at the bank the note handed her had already been

executed, and the note on its face recited that it was secured by the stock of the Starck Company instead of the Madison Square Company.

" 'Present time' usually means a period of time of some appreciable duration, and generally of some considerable duration. . . . 'Present time' usually means some period of time within which certain transactions are to take place; and 'future time' usually means a period of time to come after such present time, and after the period of time when such transactions have actually taken place."' *State v. Rose,* 30 Kan. 501, 1 Pac. 817, 820.

The entire transaction, from the manual delivery of the bond up to the time of the delivery of the security, constituted one transaction, and the representation made clearly referred to such transaction and was therefore a representation of an existing fact.

But counsel for defendant argue that nothing was said by his client with respect to the amount of stock he had agreed to deliver as security. The language used by him can only be interpreted to mean that he would give Mrs. Petherick security, which means reasonable security for the loan. At the time of this transaction the defendant had no other stock in the Madison Square Company at his disposal and he procured no other stock of that company. He realized that the stock given as security could not be placed in the deposit box of the bank after banking hours, and in order to afford no time within which to give an opportunity to inspect the security he informed Mrs. Petherick that they had just enough time to go to the bank and place the security in the safety-deposit box before the closing of the bank.

Was the representation made by the defendant false? After representing that he would give some of the same stock as security he inclosed in the envelope the worthless stock of the Starck Company. He did not apprise Mrs. Petherick that the stock put up as security was not the stock of the Madison Square Company, but by his conduct

and his words led her to believe that it was such stock. Not only did he hand her worthless stock, but he permitted her, from the date of the transaction until January, 1916, to labor under the impression that she had as security Madison Square Company stock, and then when she discovered the falsity of the defendant's representations, in order to lull her into security he falsely represented that the stock of the Starck Company was worth par.

But it is argued by defendant's counsel that there was no evidence in the case to show that Mrs. Petherick relied upon these false representations. The evidence, however, is of such a nature that it can reasonably be presumed that she parted with her Champion Lumber Company bond in reliance upon defendant's false representations.

In *Comm. v. Daniels,* 2 Parsons' Select Eq. Cas. 332, it is held:

"Where the false representations charged are clearly proved, and the intention to cheat and defraud established upon trial of the defendant for obtaining goods under false pretenses, the reliance of the defrauded party upon such pretense in parting with his goods may be presumed."

The essential facts constituting false pretenses have been adequately proven, namely: (1) that the false representations made were of an existing fact, made by the accused with knowledge of their falsity and with intent to defraud; (2) that such representations were adapted to deceive the person to whom they were made; (3) that the person defrauded relied upon such representations; and (4) that there was an actual defrauding and an obtaining of something of value by defendant without compensation to the person from whom it was obtained.

Error is based upon a number of instructions of the court to the jury. We have carefully examined these instructions and are of the opinion that they are full and adequate and constitute a proper statement of the law on the sub-

ject.   The instructions to which defendant's counsel have excepted, and their requested instructions which were refused, are mainly based upon their contentions with respect to the merits of the case and to the law, which have heretofore been ruled adversely to them.

It follows that the judgment and sentence of the trial court must be affirmed.

*By the Court.*—Judgment and sentence of the superior court of Dane county is affirmed.