Palotta v. State, 184 Wis. 290.

PALOTTA, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 10—June 3, 1924.*

*False pretenses: Nature of representations actionable: Failure of deceived person to exercise ordinary care: Representation that defendant had extraordinary powers of healing: Representation as to future events: Information: Variance as to date of crime: New trial: Discretion of court.*

1. Representations may be so utterly and palpably absurd that the court may decide as a matter of law, in a prosecution for obtaining money by false pretenses, that they could not deceive the most credulous.  p. 294.

2. In such an action it is no defense that the person defrauded failed to exercise ordinary care and prudence and to investigate the truth of the representations, the real question being whether the representations were such as to deceive and did deceive the persons to whom made.  p. 295.

3. Representations made by defendant to persons of low mentality and easily influenced by others that he was a spiritual healer and could cure nervousness from which such persons were suffering, were of such character that the court properly submitted them and their effect to the jury; and their verdict that defendant was guilty of obtaining money by false pretenses is *held* sustained by the evidence.  p. 295.

4. False representations as to past or present facts proven and relied on are not made innocuous because mingled with mis-representations as to future events.   p. 295.

5. A variance as to the date on which the representations were made is not fatal, such date being immaterial.   p. 296.

6. A motion for a new trial is addressed largely to the discretion of the trial court.   p. 296.

ERROR to review a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

For the plaintiff in error there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *M. K. Reilly.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *James Murray,* district attorney of Fond du Lac county, and oral argument by *Mr. Murray* and *Mr. Messerschmidt.*

JONES, J.   Plaintiff in error, herein called the defendant, was convicted of having secured $200 by false pretenses and sentenced to one year's imprisonment in the state prison.

In the amended information it was charged, in substance, that the defendant, on the 28th day of January, 1922, "did unlawfully, feloniously and designedly, and by falsely pretending that he . . . was a doctor, chiropractor, and spiritual healer, and that he could cure insanity and do all sorts of magic tricks, could compel and influence people to do whatever he wanted them to;" and that he told complaining witness and his mother that they suffered from nervousness; and fraudulently represented that he could cure them, and thereby deceived them and induced the witness to give him $200.

The complaining witness testified that he had heard defendant was a wonderful man and could cure people; that he was told of him by Maud Jenkins, at whose house the defendant stayed; that he and his mother consulted defend-

ant and were told that they were suffering from nervousness; that he could cure them; and that they must first pay him $200. It was further testified that before the bargain was made defendant stated that he was a doctor, the ruler of the Magii, and a spiritual healer; that he was as smart as Christ, a chiropractor, and a spiritualist. The complaining witness then went to the bank and drew out $200, as testified by the teller. The two witnesses testified that on his return this amount was paid to defendant.

There was testimony that when he took the mother and her son into the bedroom defendant prayed and put a collar having gold tassels on each of them, and spoke magic words over them; that he gave them a couple of nuts to put in their pockets; that he told them to get two silk shirts of the best silk; that he made passes over them and hypnotized them; that for a short time after the treatment complaining witness felt better, but later felt much worse than before; that defendant promised to come back on the following Friday, but did not return until about March 10th.

Defendant returned to Milwaukee on January 28th or the next day and remained there for some time, and upon his return he again treated witness, and went to the Northern Hospital for the Insane to see the mother of the witness. The witness gave him small amounts of money from time to time, some of which he testified was given as a loan and some as compensation for tailoring service. Defendant testified it was given as payment for treatments.

Defendant took up his residence in Fond du Lac in March. There is some conflict as to when the complaining witness first made the charge that he had been defrauded and demanded his money back. The prosecution was commenced in November, 1922.

The defendant denied that he represented himself to the complaining witness and his mother to be the ruler of the Magii, a spiritualist, or a spiritual healer, or that he represented himself to be anything other than a chiropractor.

Defendant also denied that there was any agreement for the payment of $200 or that $200 or any sum was paid to him at that time by the complaining witness or his mother. Defendant claimed that his price for the treatment was $2.50; that these parties had no money, and said they would pay later.

After the trial defendant presented affidavits in support of a motion for a new trial on the ground of newly-discovered evidence, which stated that a payment to a surgical instrument house had been credited to defendant on January 30th; that the methods of handling payments were such that this payment must have been made on the 28th (the date of the alleged misrepresentations), and that defendant had made the payment in person. The motion for a new trial was denied.

It is the first contention of counsel for defendant that defendant should have been discharged for the reason that there was no evidence to sustain the verdict. It is claimed that the representations which were proven were too absurd and incredible to deceive any reasonable person and that the complaining witness could not have been deceived by them.

In a recent opinion by Mr. Justice DOERFLER the necessary elements of the offense are thus stated:

"To constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or statement; an actual defrauding; and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained." *Corscot v. State,* 178 Wis. 661, 666, 190 N. W. 465.

In the earlier decisions of the courts in this country the rule was somewhat more restricted, and there are numerous

cases in which it was held that false representations which are so absurd as not to be calculated to deceive a reasonable man cannot form the basis of a criminal prosecution. There are other decisions in which it is held, stating the rule in somewhat different language, that the representations must be of such a character as to deceive persons of ordinary caution and prudence. In other cases it has been held that if the person defrauded could ascertain the real facts by the exercise of ordinary prudence there was no crime committed. Two of the early Wisconsin decisions are sometimes cited as supporting the general doctrine of the class of cases above referred to. *State v. Green,* 7 Wis. 676; *State v. Kube,* 20 Wis. 217.

But as the years have passed, the strong tendency of the decisions has been in the direction of a departure from the strictness of the earlier rule. Whoever undertakes an investigation of the subject will be surprised by the large number of reported cases in which the cupidity and ingenuity of the unscrupulous have combined to defraud the unwary by criminal methods. Of course it is not the policy of the law to punish as crimes mere civil wrongs, and there may be representations so utterly and palpably absurd that the court may decide as a matter of law that they could not deceive the most credulous.

But it seems to be now settled by the great weight of authority that statutes of this character are designed to protect the unwise and the credulous as well as the able and the vigilant. Perhaps the former class more need the protection of the law than the latter. When one has succeeded in defrauding another by means of false representations he should not be allowed to shield himself by the claim that his victim was less clever or more credulous than himself. Hence it is not the prevailing rule or the rule in this state that where all the other ingredients of the offense have been committed the defendant should be acquitted on the ground

that the person defrauded failed to exercise ordinary care and prudence. The real question is not whether the representations are such as might deceive persons of ordinary care, but whether they are such as are adapted to deceive and do deceive the persons to whom they are made. *Corscot v. State,* 178 Wis. 661, 190 N. W. 465; *Stecher v. State,* 168 Wis. 183, 169 N. W. 287.

It logically follows that it is not a necessary condition to conviction for this offense that there must be proof that the defrauded party has made investigation as to the truth of the representations relied on.

It is conceded that the mental powers of Mrs. Rhode were impaired, and it is clear from the evidence of the complaining witness that he could be easily influenced by another. The jury evidently believed that defendant made the representations that he was a spiritual healer and was endowed with magical power and that they were relied on by the complaining witness. Such statements, accompanied with glowing promises and apparent piety, were well adapted to impress people suffering from nervous ailments and eager for relief.

It is argued that prosecutions of this character cannot stand on mere promises or expressions of opinion. But when false representations as to past or present facts are proven and relied on they are not made innocuous because they are also mingled with misrepresentations as to future events. We are convinced that the representations claimed to have been made were of such a character that the court properly submitted them and their effect to the jury and that there was sufficient evidence to sustain the verdict.

There might be elaborate discussion of the subject and a great number of cases might be dwelt upon; but we believe it will be more useful to the profession to call attention to several full notes in which the cases are digested. 6 L. R. A. n. s. 369; 25 Am. St. Rep. 378; 7 Am. & Eng. Ann. Cas. 32.

See, also, 11 Ruling Case Law, 832–834; 25 Corp. Jur. 594–598.

It is further argued that the court erred in refusing to grant a new trial. Since the date on which the representations were made is immaterial, a variance on that subject would not be fatal. 25 Corp. Jur. 642.

It is claimed, however, that if January 28th was not the true date the entire case was a "frame-up." There are, however, too many undisputed facts to make it probable that any jury could have come to that conclusion. Moreover, the motion for a new trial was addressed largely to the discretion of the court. The trial judge had familiarity with all the facts, including the testimony of defendant at the trial as well as the affidavits, and we see no reason for holding that there was any abuse of discretion. The judgment of the lower court should be affirmed.

*By the Court.*—Judgment affirmed.