STATE, Respondent, vs. HINTZ, Appellant.

*January 10—February 4, 1930.*

For the appellant there was a brief by *Douglas C. Gregg* of Waukegan, Illinois, attorney, and *L. E. Vaudreuil* of Kenosha, of counsel, and oral argument by *Mr. Vaudreuil*.

For the respondent there was a brief by *Lloyd D. Smith,* district attorney of Waupaca county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Smith* and *Mr. Messerschmidt.*

OWEN, J. In December, 1917, the defendant Herman Hintz acquired title to nine forties of land in Juneau county.

This land was located in and comprised a part of the Little Yellow Drainage District. It was incumbered by a mortgage in the amount of $2,400. In January, 1918, he applied to Albert Oehlke, a farmer living in Waushara county, who was unacquainted with the land, for a loan of $3,000, to be secured by a mortgage on said land. Oehlke and the defendant were acquaintances of many years' standing, having at one time lived as neighbors in the same farming community. There is evidence to show, and sufficient to authorize the jury to find, that Hintz represented to Oehlke that the land was a clay loam soil and that he had paid $12,000 therefor. Oehlke loaned Hintz $3,000, taking as security therefor a mortgage on said tract of land. The loan was for either two or three years. However, it was extended or permitted to run from year to year by agreement of the parties until 1923, when Hintz conveyed the land to one Nicholas J. Daleiden, after which no further extensions were granted. Shortly after the sale of the land by Hintz to Daleiden, Oehlke made an investigation of the land and found that the soil was of a very poor quality of white sand, and concluded that it was worthless, for which reason he made no attempt to foreclose the mortgage. He secured a personal judgment against Hintz, which was never paid, and thereafter procured his arrest upon the charge of obtaining money under false pretenses, of which he was convicted.

The crime of obtaining money under false pretenses involves at least four essential elements: (1) there must be an intention to defraud; (2) there must be an actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud; and (4) the fraud must be accomplished by means of the false pretenses made use of for that purpose. *Bates v. State,* 124 Wis. 612, 103 N. W. 251; *Clawson v. State,* 129 Wis. 650, 109 N. W. 578; *Krenn v. State,* 157 Wis. 439, 147 N. W. 367; *State ex rel. Labuwi v. Hathaway,* 168 Wis. 518, 170 N. W. 654; *Corscot v.*

*State,* 178 Wis. 661, 190 N. W. 465; *Palotta v. State,* 184 Wis. 290, 199 N. W. 72. The false pretenses charged and proved in this case consisted of the representation made by Hintz to Oehlke that the land was a clay loam soil, and that he, Hintz, had paid $12,000 therefor. These representations, if false, constituted the essential false pretense necessary to constitute the crime if the other ingredients of the crime be established. *Bates v. State,* 124 Wis. 612, 103 N. W. 251; *People v. Cummings,* 123 Cal. 269, 55 Pac. 898. The evidence is sufficient to justify a finding of the jury that these representations were made. There is no contention that Oehlke was not in fact defrauded. It is contended, however, that the evidence does not establish any intent on the part of Hintz to defraud Oehlke.

While the intent to defraud is an essential element of the crime of obtaining property by false pretenses, and must be proved by the State, it need not be proved by direct and positive evidence. It may be inferred from all the circumstances proved. *State v. Loesch* (Mo. Sup.) 180 S. W. 875. Where all of the other elements of the crime are proved, it is generally held that the intent to defraud may be inferred from the circumstances proved. *State v. Cooper,* 169 Iowa, 571, 151 N. W. 835; *State v. Hooker,* 99 Wash. 661, 170 Pac. 374. An examination of many cases in which convictions for this offense are reviewed reveals very few instances where the sufficiency of the evidence to establish the intent has been challenged. It seems generally to be assumed that proof of the other elements of the crime is sufficient to justify an inference that an intent to defraud existed. In fact, this principle is not challenged by the defendant, but he contends that there is other evidence in the case which conclusively negatives such an intent. The evidence thus relied upon may be briefly summarized as follows: The money secured by Hintz from Oehlke was used in part for the purpose of paying off an existing $2,400

mortgage on the land during the summer of 1918. For a period of about four months in 1918 Hintz lived on the land and farmed about sixty acres thereof. During the summer of 1919 the same sixty acres were under cultivation by a renter. During these two seasons fairly good crops were raised on the land. Hintz promptly paid the interest on the loan until he conveyed the premises in 1923, at which time the grantee assumed and agreed to pay the mortgage. He also faithfully paid the taxes assessed upon the land together with the drainage assessments until his conveyance thereof in 1923. There is also evidence in the case that the market value of the land was $40 per acre. In fact, that is the only evidence concerning the value of the land in 1918. Of course that was opinion evidence, to which the jury had a right to oppose the evidence concerning the inherent character of the land. It is argued that this evidence indicates that Hintz was acting in good faith in the belief that the land was suitable for agricultural purposes and that it was worth much more than the amount of the mortgage, and that if he had intended to defraud Oehlke he would not have paid the existing mortgage on the premises, nor would he have paid the interest and taxes as those items became due.

That this conduct on the part of Hintz tends to negative an attempt to defraud cannot be denied, but in order for this court to disturb the verdict of the jury it is necessary to hold that his conduct after securing the money completely rebuts and overcomes the other circumstances in the case which point to his guilty intent. If there is any credible evidence which in any reasonable view supports a verdict in a criminal case, it cannot be disturbed on appeal. *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425; *Van Haltren v. State,* 142 Wis. 143, 124 N. W. 1039; *Clemens v. State,* 176 Wis. 289, 185 N. W. 209; *O'Keefe v. State,* 177 Wis. 64, 187 N. W. 656. In *Imperio v. State,* 153 Wis. 455, 459,

141 N. W. 241, the rule was stated to be that "if there was any evidence warranting submission of the question to the jury, there is enough to support the finding on appeal."

Because intent is something that cannot be physically visualized, or even established by direct and positive proof, and must be shown by circumstantial evidence, it is generally held that where the circumstances are conflicting, or justify conflicting conclusions, a typical jury issue is presented. For an example of the dubious circumstances which will support a finding of the jury upon the question of intent, see *Hudson v. First Trust Company in Oshkosh*, 200 Wis. 220, 228 N. W. 121. In the first place it must be conceded that the record presents those typical circumstances which it is generally held justify a finding of an *intent to defraud*. That certainly constituted evidence which justified the submission of that issue to the jury. That evidence has not been taken out of the case. The evidence tending to negative a guilty intent simply introduces into the case a set of conflicting circumstances which tends to negative an intent to defraud. Before it can be said that the latter set of circumstances overcame and outweighed the first set of circumstances, the respective circumstances must be balanced and weighed by some one. Manifestly the situation presents an ordinary conflict of evidence, the weight of which is for the determination of the jury. The power of the court to disturb the finding of the jury ends with the discovery of evidence to sustain the verdict. In the interest of exactness it should perhaps be stated that this rule is subject to two qualifications: one is where the finding of the jury is contrary to established physical facts, and the other is where it is contrary to all of the reasonable probabilities. There is no room here, however, for the operation of either of these qualifications. There are no physical facts involved, and the reasonable probabilities depend upon the inferences to be drawn from the established facts in the case. As applied to the

issue here under discussion, it would probably be difficult to distinguish between reasonable inferences and reasonable probabilities. No rule is more thoroughly established by the decisions of this court than that where conflicting inferences may be drawn from the facts proved the question is one for the jury. See cases cited under the subject of "Trial," § 7, Callaghan's Wisconsin Digest. Viewing the case from any angle, and in the light of all established principles, the question of defendant's intent presented a plain jury question. Whatever doubts we may entertain concerning the justice of this verdict, our power to disturb it is limited by established rules of jurisprudence designed to protect the sanctity of findings of fact, a function which constituted society has committed to the jury.

As we contemplate this conclusion, we cannot escape the reflection that at times one's liberties are shielded by a curtain of the merest gauze. This evidence leaves the question of defendant's intent to defraud in the greatest doubt. While it is the function of the jury to resolve this doubt, it seems probable to us that justice has miscarried by the verdict rendered. Under such circumstances it is within our power to order a new trial. Sec. 251.09, Stats.; *Paladino v. State,* 187 Wis. 605, 205 N. W. 320. Because we think the question of defendant's guilt should be passed upon by another jury, the mandate is:—

*By the Court.*—Judgment reversed, and cause remanded for a new trial.