STATE EX REL. HULL, Plaintiff in error, vs. LARSON, Sheriff, Defendant in error.

*December 10, 1937—January 11, 1938.*

586

For the plaintiff in error there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

For the defendant in error there was a brief by *Lyall T. Beggs,* district attorney of Dane county, *Elliot N. Walstead,* assistant district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Walstead.*

FRITZ, J.    The *habeas corpus* proceedings herein were instituted by L. W. Hull as petitioner to test the legality of his detention and imprisonment under a commitment issued by the superior court of Dane county upon its determination, after a preliminary examination held pursuant to the filing of a criminal complaint against him, that he be held for trial in the circuit court for Dane county.    The issues presented are whether any crime was charged in the criminal complaint, and whether the evidence introduced on the preliminary examination established a reasonable probability of the commission by Hull of the crimes charged.    In each of the six counts in the complaint it was alleged that, on or about a date

stated therein, Hull defrauded Dane county of a specified amount of money by falsely representing in a statement, which he prepared as to trucking services performed for Dane county by Jack Welch during a preceding two weeks' period, that Welch had rendered such services for certain hours in excess of the true number of hours that he in fact performed such services; that those statements were presented and the false representations therein were made to the members of the highway committee and of the audit committee for Dane county; that Hull well knew that the portions of the statements which included the excess hours were false and untrue; that Dane county by its said officials relied upon those representations in the statements, and but for them would not have parted with checks issued against its bank account for amounts which included payment for the excess hours; and that Dane county was defrauded of specified sums of money by means of the false pretenses which Hull made use of for that purpose.

The evidence introduced upon the preliminary examination was (so far as material to the consideration of Hull's contentions on this appeal) to the following effect: Hull owned a truck which he employed Jack Welch to operate in the latter's name to do trucking for Dane county at the rate of $2.50 per hour, paid semimonthly. Welch kept a daily time book in which he, or his wife under his direction, recorded the hours when he did trucking for Dane county, and also the hours that he worked on the truck when not used for Dane county. Semimonthly Welch copied from his time-book entries onto a sheet of paper the number of hours per day that he performed trucking services for the county, and those sheets he either gave to Hull, or left at the county highway-department shop. Under the county's method of auditing and paying for the truck hire, Welch was to and generally did file at the highway-department shop a daily time-

card showing the time he worked for the county, and from those cards a county highway-department clerk was to prepare semimonthly a time sheet for each trucker, showing the hours that he worked daily for the county. But some of the truckers sometimes prepared and filed their own semimonthly time sheets, and then it was the clerk's duty to verify the hours stated in those sheets by comparing and checking them with the hours reported on the daily timecards. After the clerk either prepared the semimonthly time sheets, or compared and checked such sheets as the truckers had filed, he prepared a summary of the total hours, and on the basis shown thereon the highway-department bookkeeper prepared a voucher. That voucher, summary, and time sheet were submitted to the county highway committee for audit and its approval, and then the county audit committee checked the total number of hours shown on the time sheet and the summary, and, upon multiplying them by the hourly rate, allowed the bill accordingly. Thereupon the highway committee issued a requisition on the county clerk for a check to be paid out of the county's bank deposit for the amount so allowed.

Among the semimonthly time sheets purporting to state the daily hours that Welch trucked for the county, and upon which the highway-department clerk relied in preparing summaries for the department bookkeeper and the county-board committees, there were six sheets on which hours were stated in excess of the time that Welch in fact performed work for the county. Those sheets were not prepared by the highway-department clerk, and Welch testified that he did not prepare them. The prosecution contends that they were in Hull's handwriting. That was the conclusion reached by John F. Tyrrell, an expert witness on that subject, who testified that he based his opinion upon a comparison of the handwriting on those six sheets with the handwriting on Exhibit No. 20, which is a purchase order for a truck sold by Hull to the

county highway committee, of which Carl M. Lien was a member. Tyrrell's testimony and a comparison of the handwriting on Exhibit No. 20 and the six time sheets establish to a reasonable probability that his conclusion was correct, providing there was otherwise sufficient evidence received on the preliminary examination to qualify Exhibit No. 20 as an examplar or standard of Hull's handwriting so that it could be used for making the comparison. Hull contends that the evidence was insufficient in that respect. But our review of the record discloses that the examining magistrate was warranted in concluding that Exhibit No. 20 was probably written by Hull, in view of Lien's testimony to the following effect: In June, 1933, Lien was present, as a member of the highway committee, when Exhibit No. 20 was drawn up in the highway-department office. In first testifying as to what occurred in respect to Exhibit No. 20 on that occasion, he said:

"I presume L. W. Hull drew it up and I think I saw him do it. . . . Mr. Hull had made a bid for a truck which was low bid. I am quite sure the exhibit was drawn up by Mr. Hull. It is quite customary when we award a contract. To the best of my knowledge he did. I cannot swear positively under oath he did not for I am not familiar enough with Mr. Hull's handwriting to say."

Then, when Lien testified that he based his answer on the fact that it is customary for the person who obtained the order to make out the order himself, the district attorney sought to refresh Lien's recollection by reading his testimony on a John Doe hearing. After some objections and discussion, the examining magistrate finally permitted some of that former testimony to be read to Lien, and he then testified as follows:

"*Q.* So it is your testimony after being refreshed with what was just read to you from statements made previously you still say it is quite customary? *A.* Yes.

"*Q*. Did you see him write that out on that day, on June 6, L. W. Hull, before you put your signature on it? *A*. Well, it is quite likely that I did.

"The Court: Quite likely that you did? *A*. Yes.

"The Court: That is your best answer? *A*. Yes."

In view of that testimony it was not error to receive Exhibit No. 20 in evidence. And upon the qualification thereof as an examplar of Hull's handwriting, and the opinion testified to by Tyrrell, there was sufficient competent evidence for the examining magistrate to determine that it was reasonably probable that the six time sheets in question were in the same handwriting as Exhibit No. 20, and were probably written by Hull; that, as the excess hours were stated thereon by Hull with knowledge as to the correct time, which had been reported to him in writing by Welch, Hull knowingly and intentionally falsely included the excess hours with the intent to deceive the county employees and officials charged with checking and auditing the number of hours that Welch had rendered trucking service for the county; and that in reliance upon, and by reason of Hull's false statements on those time sheets, Dane county, acting through its employees and officials, was induced to issue its checks for the excessive amounts, and was thus defrauded to the extent that the amounts paid were excessive.

Hull further contends that the crime of obtaining money by false pretenses was not proven because it appears that the county officials did not rely upon his false time sheets, but that they had opportunities to verify the entries thereon, and relied upon the verification thereof which they or the highway-department clerk made by comparing those entries with the correct entries on the daily timecards filed by Welch. It is true that the county officials had such opportunities; that it was the duty of that clerk to make such comparisons and check those entries with the daily timecards; and that greater diligence in exercising that opportunity and performing those

duties might have disclosed the falsity of the time-sheet entries. But, on the other hand, the evidence warranted finding that the county committees' members, as well as the department clerk, relied in fact to some extent upon those false entries; that those members relied upon the comparisons and the summary which the clerk erroneously made because of those time sheets; and that on the face of those time sheets and the summaries based thereon, there was nothing from which the highway-department bookkeeper, or the committees' members, or the county clerk could discover the falsity of the sheets when the county's vouchers, requisitions, and checks were issued. As a matter of law, even though the failure of the department clerk and the committees' members to detect the falsity of Hull's statements may have been due in part to their negligence, Hull is not thereby rendered immune from conviction for obtaining money of the county by means of his false pretenses, if he thereby intended to and did perpetrate a fraud on the county. As this court said in *Palotta v. State,* 184 Wis. 290, 294, 199 N. W. 72:

"When one has succeeded in defrauding another by means of false representations he should not be allowed to shield himself by the claim that his victim was less clever or more credulous than himself. Hence it is not the prevailing rule or the rule in this state that where all the other ingredients of the offense have been committed the defendant should be acquitted on the ground that the person defrauded failed to exercise ordinary care and prudence. The real question is not whether the representations are such as might deceive persons of ordinary care, but whether they are such as are adopted to deceive and do deceive the persons to whom they are made. *Corscot v. State,* 178 Wis. 661, 190 N. W. 465; *Stecher v. State,* 168 Wis. 183, 169 N. W. 287.

"It logically follows that it is not a necessary condition to conviction for this offense that there must be proof that the defrauded party has made investigation as to the truth of the representations relied on."

Hull also contends that there was no testimony that he delivered the false statements to the county, or that the county's checks were delivered to him. It is true there was no proof of a direct delivery in either of those respects. However, that there were sufficient deliveries in those respects to render Hull chargeable with the consequences thereof can reasonably be inferred from evidence which admitted finding that Hull's time sheets were in fact submitted to the county employees and officials to be acted upon by them as basis for the preparation of the summaries and the vouchers pursuant to which the county committees' members were induced to audit and allow, and cause checks to be issued for, the amounts which included payment for the excess hours; that Hull indorsed Welch's name on each of those checks, and indorsed one of them with also his own signature; and that by either cashing the checks himself, or having Welch cash them for him, Hull received and retained the amounts thereof after deducting what he owed Welch for wages.

Likewise without merit is Hull's contention that the essential element of intent to defraud was not shown because there was no testimony directly establishing such intent. As we said in *State v. Hintz,* 200 Wis. 636, 639, 229 N. W. 54:

"While the intent to defraud is an essential element of the crime of obtaining property by false pretenses, and must be proved by the state, it need not be proved by direct and positive evidence. It may be inferred from all the circumstances proved. *State v. Loesch* (Mo. Sup.), 180 S. W. 875. Where all of the other elements of the crime are proved, it is generally held that the intent to defraud may be inferred from the circumstances proved."

So, in the case at bar, if, as can be fairly found from the evidence, Hull knowingly and intentionally stated an excessive number of hours on the time sheets, which were pre-

pared by him and were submitted to the county employees and officials, who had to audit and allow the claim for the services of his truck; and if he accepted and retained the excessive amounts for which his false time sheets induced the issuance of county checks, then it may be inferred therefrom that those acts were committed by him with the intent to defraud Dane county.

Hull also contends that the complaint and warrant failed to charge any crime, in that it appears on the face thereof that the checks involved were of no value to him if delivered to him by the county. That contention is based on the statement in *Bates v. State,* 124 Wis. 612, 614, 103 N. W. 251:

"Indeed, if it charged the obtaining of any other property [than money], the information would be bad for lack of any allegation that such property was of value."

However, in the case at bar, the fact that the checks were property of value was sufficiently alleged by the statement in each count of the complaint that the county's check for a certain specified sum of money was obtained by Hull, and that the county was defrauded of a specified sum of money by means of the false pretenses made use of by him for that purpose. Moreover, in view of sec. 357.19, Stats., even if there should have been more explicit allegations as to the value of the checks fraudulently obtained, the omission thereof from the complaint would not necessitate discharging the defendant in *habeas corpus* proceedings brought after he was bound over on evidence taken on a preliminary examination, at which the sufficiency of the complaint was not questioned, and at which the value was admitted by a stipulation that the six checks set forth in the complaint were paid by the bank in the regular course of business, and were charged by it to the account of Dane county. *State v. Brown,* 143 Wis. 405, 410, 127 N. W. 956.

*By the Court.*—Order affirmed.