STATE EX REL. DINNEEN, Plaintiff in error, vs. LARSON, Sheriff, Defendant in error.

*November 7, 1938—May 9, 1939.*

208

For the plaintiff in error there were briefs by *Gold & Mc-Cann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the defendant in error there was a brief by the *Attorney General,* and *William H. Spohn* and *Bruno V. Bitker,* special counsel, and oral argument by *Mr. Spohn* and *Mr. Bitker.*

The following opinion was filed February 7, 1939:

FRITZ, J.  The order under review was entered in *habeas corpus* proceedings instituted by William M. Dinneen, as petitioner, to test the legality of his detention under a commitment issued by the superior court of Dane county upon its determination, after a preliminary examination pursuant to the filing of a criminal complaint against him, that he be held for trial in the circuit court for Dane county.  The principal issues presented on behalf of Dinneen are (1) does the evidence establish the commission of a criminal offense; (2) does it show that Dinneen probably committed the acts alleged by the state to constitute a criminal offense; and (3) does it show where the alleged acts were committed.

In connection with the first and second of those issues Dinneen contends that the complaint upon which the warrant was issued fails to state an offense, and that the evidence fails to establish that there is probable cause to believe he committed the acts alleged to constitute a crime.  No useful purpose will be served by an extended discussion as to the

sufficiency of the allegations in the complaint to state an offense or the nature thereof. It suffices to note that for reasons hereinafter stated, the facts alleged in the complaint satisfied the requirements that "only a substantial statement of a criminal offense in the complaint is necessary to give the examining magistrate jurisdiction." *Gordon v. State,* 158 Wis. 32, 34, 147 N. W. 998; *Butler v. State,* 102 Wis. 364, 78 N. W. 590. It is well established that,—

". . . under sec. 355.17, Stats., a district attorney, in filing an information, is not restricted to the crime stated in the complaint made before the examining magistrate, but that he may file an information setting forth the crime committed according to the facts ascertained on such examination, whether it be the offense charged in the complaint upon which the examination was had or not. . . . Consequently the evidence on the preliminary examination must be deemed sufficient to warrant holding the plaintiffs in error for trial if it admits of finding the existence of the essential facts to constitute any criminal offense, although it was not charged in the complaint." *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 201, 251 N. W. 478; *Hobbins v. State,* 214 Wis. 496, 253 N. W. 570.

Furthermore, upon *habeas corpus* proceedings to test the legality of the detention of a petitioner imprisoned pursuant to the determination of an examining magistrate, after a preliminary examination, the reviewing court—

"can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that and weigh the evidence. It can say whether the complaint will admit of a construction charging a criminal offense, or whether the evidence rendered the charge against the prisoner within reasonable probabilities. That is all. When it has discovered that there was competent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act, upon evidence worthy of consideration in any aspect, is as well within his jurisdiction when he

decides wrong as when he decides right." *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N. W. 1046; *State ex rel. Hull v. Larson,* 226 Wis. 585, 277 N. W. 101; *Vejih v. Redford,* 182 Wis. 311, 314, 196 N. W. 228; *Lundstrum v. State,* 140 Wis. 141, 144, 121 N. W. 883.

A review of the evidence on the preliminary examination, construed most favorably to the state's contention in the light of those rules, discloses that the magistrate was warranted in considering the evidence sufficient to prove the existence of the following facts. At all times between January 1, 1935, and October 16, 1937, Dinneen was secretary of the public service commission, which was charged with the administration of the Securities Act, sec. 189.01 *et seq.,* Stats. In the course of such administration, complaints against, and other matters affecting security dealers, were routed by and through Dinneen, who, as such secretary, was charged with keeping full and correct records of all transactions and proceedings of the commission. Sec. 195.01 (8), Stats. During that period B. E. Buckman & Company of Madison, Wisconsin, was a licensed security dealer, and under the jurisdiction of the commission in administering the Securities Act. In 1937 that company was adjudged a bankrupt and the federal court appointed receivers of its assets. They found among the files in the company's Madison office two originals and many copies of letters addressed to the commission, copies of the latter's letters in reply, and also copies of interdepartmental rulings and communications, all dealing with activities of B. E. Buckman & Company. The commission's offices, including that of its secretary, were in Madison, where Mrs. Mary V. S. Van Riper, as Dinneen's chief assistant and under his general supervision, assorted the mail for distribution to the various branches of the commission. Upon being informed by her that many complaints were being made against B. E. Buckman & Company, Dinneen gave her specific instructions to hold all such complaints for his attention and to have copies made for him. Pursuant to his directions

copies thereof were typed by stenographers in the commission's office, on stationery of the kind used in that office. Those copies, together with the originals, were delivered to Dinneen in his office, and several times a month he, and at times clerks employed there under him, gave messengers of the commission envelopes or packages with inclosures, which they delivered pursuant to Dinneen's directions to the office of B. E. Buckman & Company. Neither of the present commissioners nor a former commissioner nor the commission had given permission to take original letters from its files. Among the letters found by the receivers in B. E. Buckman & Company's files were the following originals addressed to and received at the commission's offices from John Mohr and Mrs. E. Lemke, respectively, to wit:

"Stratford, Wis., June 29, 1936.
"Public Service Commission of Wisconsin,
"Madison, Wis.
"Gentlemen: Your letter of June 24 at hand. I certainly cannot understand that you did not receive 1 letter, written the latter part of May and 1 postcard written the first part of June—both communications asking about Continental Public Service stock. After having waited for an answer I finally mailed my last letter, dated June 19th. As stated above after having waited in vain for an answer I went to the office of the B. E. Buckman Co. at Wausau and sold them my shares. They gave me $4 per share. No other security dealer so it seems is able to sell this stock. But here is a very curious angle: Mr. Buckman, who is in charge of the Wausau office—asked me: You wrote to the Public Service Commission in Madison, did you not? You asked them about this stock? I answered: Yes, I wrote to the Commission but they never answered me. Nothing more was said. Only he said: Why did you write in? I said: To find out if the Commission gave permission to sell this stock the time I bought. Now: How did the Buckman Co. find out that I wrote to your Commission? I never told them either in person or by letter. But Mr. Buckman knew it! How did he find out? Does he make inquiries at your office to find out who writes in? Or was he notified that I wrote? Or did somebody inform him from your office? He certainly did not read my

thoughts because I was afraid that if I told them they would never buy my stock, but he knew it! Is there a leak in your office? I simply ask this—for I am not aware of what is being done there. At any rate, I am glad that I got rid of this stock which was sold to me with such high promises: Like cash dividends—and that it would be listed on the Chicago exchange—promises which were never fulfilled.

"You need not mail any information concerning this stock— I have no more of it. But you might try and find out how Buckman Co. finds out when inquiries reach your office.

"Thank you for your favors.

"Very truly yours,
"JOHN MOHR,
"Stratford, Wis.
(Signed) "JOHN MOHR."

"Wausau, Wis., Jan. 23, 1935.
"Public Service Commissioner, Madison, Wis.

"Dear Sir: My mother has been doing business with the B. E. Buckman Co., investors, the past year, and as friends have cast a doubtful word as to their honesty, I have decided to investigate regarding her investments. I have been advised to write to your department.

"The following are securities she holds and upon looking up some of these investments, I find they are not listed. Could you give me list prices on same?

"Bay City Rice Co., 5% Bond—Texas
"Interstate Public Service, 6% mtge. bond
"Continental Public Service, 6% mtge. bond, also
"Arkansas
"Continental Public Service common stock at no par value, for which $4 per share was paid.

"I am not familiar with the services rendered by your department, so if I am asking something out of your line, kindly advise me where I could gain such information.

"Yours very truly,
(Signed) "MRS. E. LEMKE.

"Mrs. C. E. LEMKE,
"207 Alexander St.,
"Wausau, Wis."

Those letters were relevant and material to matters which were within the commission's supervision and powers to in-

vestigate under subs. (7) to (11) of sec. 189.14, Stats.; and as such they were *prima facie* part of the things received and required to be filed and kept by law in the commission's office as prescribed by the provisions in sec. 18.01 (1), Stats., that—

"Each and every officer of the state . . . is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officer."

While it is of course open to the defendant upon a trial to show,—if such should be the fact,—that by the custom and practice of the commission those letters were mere fugitive papers, which were not required to be filed or kept, but were subject to disposition at the pleasure of the secretary, the relevancy of the letters to matters which may legitimately concern the commission in its official activities is evidence of sufficient substance upon a preliminary examination to warrant a magistrate in concluding that they constituted property and things required by law to be kept by defendant. Consequently, in so far as the circumstances stated above admitted of findings by the examining magistrate that Dinneen wilfully caused those original letters to be withdrawn from the commission's office and delivered to B. E. Buckman & Company, or that he wilfully neglected to perform his duty to keep them in that office, the magistrate can be deemed to have had probable cause to believe that sec. 18.01 (1), Stats., had been violated by Dinneen; and that by reason thereof there was such official misconduct or malfeasance in office on his part as to constitute a criminal offense under sec. 348.29, Stats., which provides (so far as here material) that any officer of the state—

"who shall wilfully violate any provision of law authorizing or requiring anything to be done or prohibiting anything

from being done by him in his official capacity or employment, or who shall refuse or wilfully neglect to perform any duty in his office required by law, . . . shall be punished by imprisonment," etc.

Although sub. (4) of sec. 18.01, Stats., provides for the payment of a forfeiture to be enforced by a civil action against any person who violates that section, it is expressly stated therein that the forfeiture is to be "in addition to any other liability or penalty, civil or criminal." On the other hand, it must be noted that, inasmuch as the "property or things mentioned in subsection (1)" of sec. 18.01, Stats., are expressly declared by sub. (2) thereof to be open to examination or the making of copies by any person, Dinneen's acts in merely giving to B. E. Buckman & Company or any other person copies of, or information in respect to, letters so required to be kept would not warrant the conclusion that he thereby committed any criminal offense. Likewise, it must be noted that there is no evidence of any substance that he furnished the letters or copies in question to B. E. Buckman & Company to enable it, by effecting settlements or otherwise, to silence complaints regarding it or its transactions, or to avoid investigations thereof by the commission. In the absence of such evidence there is no occasion to determine whether such conduct on his part would constitute a criminal offense.

Furthermore there is no factual basis in the record for the state's contention that Dinneen committed any such fraud as is prohibited by sub. (2) of sec. 189.16, Stats., or for the trial court's suggestion that "a gross fraud or cheat at common law" was committed by him. Sub. (2) of sec. 189.16, Stats., provides for the punishment of "every officer, agent, or employee of any issuer and every dealer, agent, and every other person . . . who authorizes, directs, aids in or consents to" any one of the number of described acts in the issuance or sale of, or qualification for the authorized sale of securities, or who "commits any fraud or in any other re-

spect wilfully violates or fails to comply with any of the provisions of this chapter or the terms and conditions of any registration or any lawful order of the commission under the provisions of said chapter." But, under the doctrine of *ejusdem generis,* the meaning and effect of those provisions must be deemed restricted to persons and acts within the classes enumerated therein; and as neither Dinneen nor his acts, which are in question herein, were within those classes, those provisions are not applicable.

The state also claims that Dinneen violated and committed an offense under sec. 189.14 (11), Stats., by his failure to enter complaints against B. E. Buckman & Company, which came to his knowledge in letters addressed to the commission, of which he gave the originals or copies to that company. Sec. 189.14 (11), Stats., empowers the commission, the attorney general, or any district attorney to investigate and bring an action in the event of certain violations of the Securities Act by "any issuer, dealer, agent, or other person," but it does not vest any such power or duty in the secretary of the commission. Consequently, the conduct with which Dinneen is charged was not in violation of any duty imposed upon him by that section.

Furthermore, the state claims that Dinneen violated sec. 348.28, Stats., in which,—in connection with declaring that the commission of certain acts by an officer in performing certain other acts in his official capacity shall be punishable,—there is the omnibus provision, "or do any other act in his official capacity, or in any public or official service not authorized or required by law." But the context of that provision and the other provisions describing the acts punishable under the section is such that under the doctrine of *ejusdem generis* the meaning and effect must likewise be considered restricted to acts of the same general classes as those which are specifically described in the other provisions, and when thus construed that section is likewise not applicable to the acts with which Dinneen is charged.

Those conclusions in respect to the restricted meaning and effect which must be given to secs. 348.28, 189.14 (11), and 189.16 (2), Stats., are in accord with the rule that in construing and applying statutes claimed to impose criminal liability—

"if the acts alleged do not come clearly within the prohibition of the statute its scope will not be extended to other offenses than those which are clearly described and provided for; and if there is a fair doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant." *Walter W. Oeflein, Inc., v. State,* 177 Wis. 394, 396, 188 N. W. 633.

Dinneen's contention that the evidence fails to establish in what county the acts claimed to constitute a crime were committed cannot be sustained. Courts take judicial notice that the offices of the public service commission and its secretary, are in the city of Madison, Dane county; and the testimony in relation to Dinneen's alleged unlawful acts is clearly to the effect that they were committed in those offices.

The testimony of the witnesses Mohr and Yates in relation to conversations had in the absence of Dinneen appears to be incompetent, as he contends. However, that testimony did not materially affect the issues in respect to Dinneen's commission of the criminal violations as stated above. Consequently, the admission of that incompetent testimony did not constitute such prejudicial error as to impair the committing magistrate's final determination. It follows that the order under review must be affirmed.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, without costs, on May 9, 1939.

The following opinion was filed June 6, 1939:

FRITZ, J. (*on motion for rehearing*). On his motion for a rehearing the plaintiff in error contends that the acts

218

charged against him are not within sec. 348.29, Stats., because under the doctrine of *ejusdem generis* the meaning and effect of the provision that any public official "who shall wilfully violate any provision of law authorizing or requiring anything to be done or prohibiting anything from being done by him in his official capacity or employment, or who shall refuse or wilfully neglect to perform any duty in his office required by law, . . . shall be punished by imprisonment," etc., must be considered restricted to acts of the same general classes as those which are specifically described in the other parts of the statute. That would confine the effect of the provision quoted above to official acts which are within the classes prohibited by the preceding provision, "who shall pay, redeem, discount or purchase any debt, claim or demand in favor of any other person, against the state, or any county, town, school district, school board, city or village therein, or against any fund thereof below the true and full amount thereof, or who shall pay any such debt, claim or demand for any purpose out of any fund not provided for such purpose," or within the subsequent provision, "or shall be guilty of any wilful extortion, wrong or oppression therein." In support of his contention the plaintiff in error relies upon the following statement in *State ex rel. Schwenker v. District Court,* 206 Wis. 600, 608, 240 N. W. 406,—

"It follows from the phraseology of the statute [sec. 348.29] that unless evidence is offered of corrupt conduct the complaint cannot be sustained. . . . This legislation is calculated to prevent an abuse of public justice by preventing an officer from unlawfully taking, by color of his office, from any man any money or thing of value that is not due him, or more than is due him, or before it is due. It is intended by the influence of the penalty in cases where necessary to insure, as far as possible, righteous conduct by any officer in his office in dealing with public affairs and with the public or any member thereof, and to keep such officer from acting in any particular in the hope of private gain or from selfish motives."

In so far as that statement purports to limit the acts punishable under the statute to such as involve corrupt conduct or selfish motives, or the hope of private gain, it must be qualified in view of the history of the provisions which were combined and embodied by the revision of 1878 in the section numbered 4550, Stats. 1878,—now known as sec. 348.29, Stats. Between 1836 and 1878 a number of provisions had been enacted which provided for the punishment of official misconduct in the performance or neglect in performing official acts under such circumstances as constituted criminal malfeasance in office at common law. To establish that offense at common law did not necessarily require proof of corruption, selfish motives, or the hope of private gain. As is stated in 46 C. J. p. 1049, § 345,—

"At common law, a failure or neglect of an officer to perform a ministerial duty imposed upon him by the law renders him guilty of a misdemeanor; and it would seem that, notwithstanding the provisions of a statute which have been disobeyed are, as respects the public, merely directory, the neglect of the officer to observe them may be a misdemeanor. . . . To constitute an indictable offense of misbehavior in office, it is not essential that pecuniary damage should have resulted to the public by reason of an officer's irregular conduct, or that the officer should have acted from corrupt motives."

In the revisor's notes in relation to secs. 4549 (now sec. 348.28) and 4550, Stats. 1878, it is stated that "these two sections embrace the substance of all the laws on the subject, with additional classes standing in the same relation to the public service, and more stringent provisions made. These scattered provisions and fragments are found in" certain specified chapters and sections of laws and statutes. That statement was repeated in relation to the revisions in 1889, 1898, and the subsequent years. As Mr. Justice FOWLER stated in a dissenting opinion in *State v. Bennett*, 213 Wis. 456, 471, 473, 474, 252 N. W. 298, after an extended study

of the history of the provisions in secs. 348.28 and 348.29, Stats.,—

"The revisors codified a dozen or more malfeasance statutes standing in the session laws 'with additional classes standing in the same relation to the public service, and more stringent provisions (were) made,' as stated by the revisors, and expressed them in secs. 4549 and 4550, R. S. 1878, which still stand, with slight changes not here material, as secs. 348.28 and 348.29, Stats. 1931. Secs. 4550 and 348.29 penalize any person mentioned in the next preceding section 'who shall pay, redeem, discount or purchase any debt or claim' against the governmental unit in whose service he is or 'shall wilfully violate any provision' of those sections. Examination of the session laws codified, a summary of which next follows, shows a constant extension of penalizing provisions respecting both acts and persons." (p. 471.)

"It is to be observed that these session laws relate severally to town clerks, town treasurers, clerks of school districts, school boards, county treasurers, county clerks, members of county boards of supervisors, to all county officers, and to boards managing the several state institutions. *Some penalize acts independent of interest of the officer in the transaction.*" (p. 473.)

"The clause in sec. 4549 'or do any other act in his official capacity . . . not authorized by law' was apparently inserted as a catch-all to cover all specific prohibitions upon 'officers' contained in the session laws codified and any other violations of law by officers. It was apparently the purpose of the revisors of 1878 and of the legislature that enacted the revision to frame a malfeasance statute that would cover every conceivable violation of law by municipal officers and every conceivable transaction by them or any 'agents or clerks' in municipal service with the municipality served in which they or any of them had any interest." (p. 474.)

That part of sec. 348.29, Stats., which provides for the punishment of any public official "who shall wilfully violate any provision of law authorizing or requiring anything to be done or prohibiting anything from being done by him in his official capacity or employment, or who shall refuse or wil-

fully neglect to perform any duty in his office required by law" is substantially the common-law definition of the crime of malfeasance in office.  46 C. J. p. 1049, § 345; 1 Russell, Crimes and Misdemeanors (8th ed.), p. 561; 1 Bishop, Criminal Law (9th ed.), p. 347; Throop, Public Officers, p. 813, § 855; Mechem, Public Officers, book 5, ch. 5, p. 676.  That definition had been incorporated in part or in substance in many of the enactments prior to 1878 in relation to the particular officers mentioned therein.  But until its incorporation in sec. 4550, Stats. 1878, that definition was never part of a section relating to merely the classes of acts described in those parts of sec. 4550, Stats. 1878, which precede and which follow that definition; and its effect and application was never confined to merely those classes of acts.  Neither do all of the prohibited acts in the classes described in the parts of sec. 348.29, Stats., which precede and follow that definition necessarily involve corrupt motives or conduct or the hope of private gain.  Proof of those elements is not essential to establish a criminal violation by the payment, redemption, discounting, or purchasing of a claim, debt, or demand against the state or a municipality by an official in a manner prohibited by the statute.  Proof of corruption is essential only when the offense charged is under that part of the statute which relates to wilful extortion, wrong, or oppression in the refusal or neglect to perform an official duty required by law.  At all events the doctrine of *ejusdem generis* does not require restricting the application of the plain and unambiguous meaning and scope of the provision, which is substantially the common-law definition of malfeasance in office, to but the classes of acts prohibited by the provisions in other parts of sec. 348.29, Stats., which are of no greater importance or dignity.  Consequently, the motion for a rehearing is denied.