CHAMBERS, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 12—May 7, 1940.*

For the plaintiff in error there was a brief by *Rubin, Zabel & Ruppa* and *Gerald H. Kops,* attorneys, and *Wm. B. Rubin* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin* and *Mr. Kops.*

For the defendant in error there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county, and *Gene L. Green,* assistant district attorney, and oral argument by *Mr. Green.*

FRITZ, J.   In the *habeas corpus* proceeding, the district court's ruling that the crime of burglary in the nighttime was committed is not challenged, but the petitioner, Chambers, contends that there was not probable cause for the magistrate to believe that he was guilty of that crime.   His contention is based upon the claim that the evidence was insufficient to identify him as a participant in the commission of the crime because the testimony as to identification was false on its face, inherently improbable and contrary to the physical facts, and that, consequently, there was a failure to establish probable cause to the degree required to give the magistrate jurisdiction to bind Chambers over for trial.   In passing upon these contentions in a *habeas corpus* proceeding to test the legality of a petitioner's detention, pursuant to an examining magistrate's determination after a preliminary examination, the reviewing court can examine the evidence only sufficiently to discover whether it rendered the charge against the prisoner within reasonable probabilities and there was any substantial ground for the exercise of judgment by the com-

mitting magistrate. When the reviewing court has discovered that there was competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N. W. 1046; *State ex rel. Dinneen v. Larson,* 231 Wis. 207, 284 N. W. 21, 286 N. W. 41.

In committing the burglary a safe was removed from a house to an automobile coupe which was parked facing south on the west side of North Van Buren street in the middle of a block bounded by East Pleasant street on the north. The night was dark and there were large trees along the street, but there was an electric street light on a pole about thirty feet south of the house. The evidence principally relied upon to identify Chambers was testimony to the following effect by Police Officer O. H. Haase. As he was about to speak to an acquaintance in an automobile which was standing at the west curb of North Van Buren street near East Pleasant street, with its headlights shining south on North Van Buren street, he saw several men and an automobile in mid-block on the west side of the street; and the headlights disclosed a partly covered safe as one of the men moved away from the curb. As Haase walked toward the group, he saw that man step to the left rear side of the automobile and bend over the rear license plate so as to obscure any view thereof. By the time Haase was about even with the automobile the men had put the safe on the seat of the automobile and then moved around to the left side thereof. Haase asked what was going on and a man replied that they were moving a radio. Haase, with his flashlight in his left hand and his revolver in his right hand, stepped to five feet in front of the left corner of the automobile and mentally noted that the number on the license plate was 17–819. While doing that the left door of the automobile was open part way so as to partially obstruct

Haase's view toward the rear, but he saw one of the men get into the driver's seat and three men standing in the road to the side of the car, behind the open door. Then Haase, facing northward, stepped north and east to within two feet east of the left front corner of the automobile, and saw that the man, who was bent over the rear license plate, moved a little farther eastward from the left rear corner of the automobile. Haase turned his light on the three men who were all in the line of its rays as he flashed it from one to the other, and wanted to see who the man was who bent over the plate. That did not take very long, but Haase took just enough time so that he would be able to recognize him again, and saw that he wore a hat and dark clothes and had no mustache or glasses. That man,—Haase testified on the subsequent preliminary examination,—was the man (Gordon Chambers) who was sitting behind Mr. Rubin in the courtroom. After the man got on the driver's seat, one of the men said "Let's get going from here," and the headlights were switched on and the motor started. Chambers ran a few steps to the northeast and then southeastward, diagonally across the street to the right of Haase. The other two men ran to Haase's left and one of them jumped on the left running board as the automobile moved from the curb and went southward. The other ran into a yard to the west and Haase chased after him and shot him. While running, Haase fell and was hit by something so that he was taken to the hospital in the ambulance with the man who was shot. After several days, when Haase was home from the hospital, he identified Chambers as one of the men in a group photograph. Subsequently, after Chambers' arrest, Haase also recognized him in a group of other men.

In addition there was the circumstantial evidence that the automobile licensed as number 17–819 was registered in the name of the wife of Chambers, residing at 2534 North Forty-Fifth street, Milwaukee; that it was found subse-

quently during the night of the burglary in a downtown garage; that an examination thereof disclosed marks on the interior which were testified to have been caused by the safe; and that Chambers and his wife were located at about 5 a. m. after the burglary in a room in a downtown hotel. Haase's testimony as to the conditions and what he could and did observe at the scene of the burglary, and his subsequent identification of Chambers in three instances, together with the corroborating circumstantial evidence clearly warranted the magistrate's conclusion that there was sufficient evidence to identify Chambers as one of the men who participated in the burglary. Whether Haase was where he could sufficiently observe Chambers' face and distinguishing characteristics as he stood near the rear of the automobile and then ran southeastward and diagonally across the street to the left of Haase, and whether there was sufficient illumination afforded by the nearby street light, Haase's flashlight, and the headlights of the acquaintance's automobile to enable him to see Chambers so that Haase could identify him as he did on the subsequent occasions, depends upon the credibility and weight which the examining magistrate believed and found could be given to Haase's testimony. If the magistrate considered that testimony credible and convincing, then it was within his province to conclude that the charge against Chambers was within reasonable probabilities and there was substantial and sufficient ground for the exercise of the magistrate's judgment and jurisdiction to bind over the defendant for trial.

However, Chambers further contends that the circuit court erred in not admitting evidence offered in the *habeas corpus* proceedings to prove that Haase's testimony on the preliminary examination was insufficient and incompetent to identify him, and therefore did not sustain jurisdiction on the part of the magistrate to bind him over for trial. The proposed evidence which was not admitted was (1) testimony to show by a photographer and certain pictures taken

by him under the conditions which Haase described, including the use of a flashlight and also by using a light of a thousand times greater power, that it was physically impossible for Haase to see what he testified he did see; (2) testimony by the police department's superintendent of its bureau of identification that the group picture, in which Haase identified Chambers, would disprove Haase's testimony and prove that it did not constitute evidence of identification; and (3) testimony by a doctor and proof by the hospital records that Haase's injuries at the time in question were such as to render his identification highly impossible and improbable. Some of the proposed evidence might have been admitted if offered by Chambers on his preliminary examination, as he had the right to do under sec. 361.13, Stats. In that event the evidence would undoubtedly have been taken into consideration by the magistrate; but, at most, it would have been but additional evidence in relation to Haase's opportunity and ability to identify Chambers and might have affected the credibility and weight of Haase's testimony. However, it had no bearing and was inadmissible in the *habeas corpus* proceedings because under the record herein the issue was solely whether the evidence which was introduced on the preliminary hearing afforded sufficient basis for the magistrate to find that there was probable cause to believe that Chambers participated in the burglary.

*By the Court.*—Order affirmed.