SHARP, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 7—June 1, 1942.*

*Harold J. McGrath* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county, and *George A. Bowman,* deputy district attorney, and oral argument by *Mr. Bowman.*

MARTIN, J. The case was tried to the court without a jury. The court found defendant guilty of violating sec. 85.141 (1), (3), Stats., which provide as follows:

"(1) *Accidents involving death or personal injuries.* (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of subsection (3) of this section. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not less than ten days nor more than one year or by fine of not less than five dollars nor more than five thousand dollars, or by both such fine and imprisonment."

"(3) *Duty to give information and render aid.* The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such a person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

It appears that about 10 o'clock in the evening of October 30, 1941, Willard Heyden, nineteen years of age, was engaged in changing the left front tire of his father's automobile which was parked near the corner of Thirty-Seventh street and Lisbon avenue in the city of Milwaukee. While so engaged he was struck and injured by an automobile driven

by the defendant. It was a dry, clear night and there was little traffic upon the highway. No cars were parked immediately in front of or behind the Heyden car. The evidence on the part of the state shows that Willard was in a squatting position, tightening the nuts on the wheel, when his father, who was standing to his right, hollered, "Look out! There's a car coming!" The father, who saw defendant's car approaching, jumped up onto the running board of his car to escape being hit. Willard straightened up and moved closer to the left front fender of the father's car. The right front fender of defendant's car struck Willard and the right rear wheel ran over his foot. There was ample space for defendant to pass the Heyden car.

William Heyden, the father, testified that defendant brought her car to a stop within a distance of approximately fifty feet, after he had hollered to stop the car; that defendant was alone in her car; that defendant, after she had stopped, opened the right-hand door and asked, "What business have you in the street?" that he replied, "You could have at least cleared a person . . . standing in the street."

Willard Heyden testified that after defendant had stopped he proceeded to her car and heard the conversation between defendant and his father; that he took no part in the conversation; that he heard his father upbraid defendant for her failure to give a two-foot clearance in passing; that defendant replied, "What are you doing in the road?" Willard further testified that he was only able to get the first three numbers of the license plate of defendant's car before she drove away.

The defendant testified that she was proceeding east on Lisbon avenue; that as she approached Thirty-Seventh street she saw a man on the driver's side of Heyden's car; that she heard a shout, "Look out!" or something similar; that because of the shout she stopped her car; that when she opened the door a great deal of shouting was going on; that she asked one of the men what he was doing in the middle of the street,

and the question was then as to proper clearance, that she hadn't been two or three feet away from Heyden's car. She further testified that she was sure that she had completely cleared it; that she was not aware that anyone was injured; that after a great deal of unpleasantness she left. At the trial she identified Willard and his father as the two men present at the scene of the accident, and testified that her conversation was with the older gentleman, the father; that he was very excited; that he upbraided her for failing to allow sufficient clearance as she passed his car; that he was abusive to her; that he did not make any statement that he or anybody else had been injured.

There is no evidence that defendant gave her name or address to either Willard or his father. Defendant testified that she did not learn of anyone being injured until she read of the accident in the newspaper the following evening; that at noon, November 1st, she went to the police station and reported the accident. The police officer to whom she reported testified:

"The defendant stated [to him] that after the accident she drove away, unaware that anyone was hurt, and the first she knew that anyone was hurt was when she read about it in the October 31st newspapers. She said she stopped a few minutes and an argument ensued between defendant and the complainant. She did not tell me what was said there at that time."

In *Link v. State,* 217 Wis. 582, 585, 259 N. W. 428, 261 N. W. 416, in reference to sec. 343.181, Stats. 1933, now sec. 85.141 (1), (3), Stats. 1941, under which defendant was convicted, the court said:

"The legislative intent in the enactment of the statute in question is obvious. It requires immediate assistance on the part of the driver of the vehicle causing the injury to the person injured, to the end that the person so injured may have medical or other attention with the least possible delay. The

reason for requiring that the operator of the vehicle shall give his name and address and the name and address of the owner of the vehicle to the person injured or to some person accompanying the injured or to the sheriff of the county or some of the other officers mentioned in the statute is likewise very clear. It furnishes a lead for investigation to the end that responsibility for the accident may be placed. It is a wholesome, humane statute."

The defendant's sole contention is that there is no evidence to sustain the judgment of conviction and sentence. It is the rule in this state that, if there is any credible evidence which in any reasonable view supports a verdict in a criminal case, it cannot be disturbed on appeal. *State v. Hintz,* 200 Wis. 636, 640, 229 N. W. 54, and cases there cited.

The defendant complied with only one of the requirements of the statute. She stopped; but she did not give her name, her address, nor the registration number of the vehicle she was driving. The law requires that she remain at the scene of the accident until she has fulfilled the several requirements specified in sec. 85.141 (3), Stats. She saw a man at the side of the parked car. She heard the shout, "Look out!" The trial court was not obliged to accept as true defendant's testimony to the effect that she did not know her car had hit anyone. It was the duty of the court to consider and weigh all the testimony and pass upon the credibility of the several witnesses. We cannot say that there is no credible evidence to sustain the judgment.

*By the Court.*—Judgment affirmed.