WALTER W. OEFLEIN, INC., Plaintiff in error, vs. THE
STATE, Defendant in error.

*March 17—June 6, 1922.*

*Criminal law: Labor advertisements: Failure to disclose existence
of strike: Labor trouble in crafts other than that advertised
for: When strike exists.*

1. Criminal statutes must be strictly construed, and if the acts
   alleged do not clearly come within the prohibition of the
   statute its scope will not be extended to other offenses than
   those clearly described and provided for. If there is a fair
   doubt as to whether the act charged is prohibited, that doubt
   is to be resolved in favor of the accused.
2. In construing a statute the legislative intent is to be deter-
   mined from a general view of the whole act with reference
   to the subject matter to which it applies, and effect is to be
   given, if possible, to every word, clause, and sentence.
3. Sec. 1729*p*—1, Stats. 1919, requiring an advertisement for
   labor to state that a strike or lockout exists in such employ-
   ment at such place, does not require an advertisement for
   bricklayers to state that there is a strike at the employer's
   plant unless the strike affects the particular craft in which
   the effort is made to hire help.
4. Where three union bricklayers, employed at an open shop, had
   quit their work because the hours of labor violated the union
   rules, but without making any demand on the employer that
   he conform to them and in fact without informing him of
   the reason for quitting, there was no "strike" within the
   meaning of sec. 1729*p*—1, Stats. 1919, a strike being an act
   of quitting employment when done by mutual understanding
   by a body of workmen as a means of enforcing compliance
   with demands made on their employer.
5. Said sec. 1729*p*—1, requiring an advertisement for labor to
   state truly the character of the work to be done, the com-
   pensation, and the sanitary or "other conditions" of the em-
   ployment, does not require a statement as to a strike in crafts
   other than that in which the effort is made to hire help, be-
   cause the statute elsewhere covers the requirements in case
   a strike exists; a statement, therefore, in an advertisement
   for bricklayers that there was no labor trouble was not a
   violation of the statute, though there was trouble affecting
   other crafts.

Walter W. Oeflein, Inc. v. State, 177 Wis. 394.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BACKUS, Judge. *Reversed.*

A writ of error was procured by the plaintiff in error to review the judgment of the municipal court in and by which the plaintiff in error was convicted of violating sec. 1729*p*—1 of the Statutes of 1919 and sentenced to pay a fine, etc.

The information charged the publication of the following advertisement in the Milwaukee Journal on June 29, 1920:

"Wanted: Bricklayers, first-class mechanics on long job now under construction on the Port Washington Road, six blocks north of Worden-Allen plant. Wages $1.25 per hour, nine and one-half hours per day and work Saturday afternoons, no labor trouble. Tel. Lin. 4055 between 8 a. m. and 5:30 p. m."

Said information also charged that on the date of said advertisement and prior thereto there existed a strike among the various artisans employed by the plaintiff in error, and particularly among the bricklayers, and that said plaintiff in error in said advertisement failed to comply with the requirement of said statute in failing to state therein that such strike existed at the time of such advertisement. And the information also charged false advertising, in that it stated that at the time of the advertisement there was no labor trouble in and about the plant of the plaintiff in error.

For the plaintiff in error there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles, Kenneth P. Grubb,* and *Leon B. Lamfrom,* of counsel, all of Milwaukee, and oral argument by *Mr. Lamfrom* and *Mr. J. V. Quarles.*

For the defendant in error there was a brief by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *George A. Shaughnessy,* assistant district attorney, and oral argument by *Mr. Zabel* and *Mr. Shaughnessy.*

DOERFLER, J.    In view of the decision in *Biersach & Neidermeyer Co. v. State, ante,* p. 388, 188 N. W. 650, it will be unnecessary in this opinion to consider the constitutional questions raised in this case.

Sec. 1729*p*—1 of the 1919 Statutes provides, among other things, as follows:

"1. It shall be unlawful to influence, induce, persuade or attempt to influence, induce, persuade or engage workmen to change from one place of employment to another in this state or to accept employment in this state or to bring workmen of any class or calling into this state to work in any department of labor in this state, through or by means of any false or deceptive representations, false advertising or false pretenses concerning the kind and character of the work to be done, or the amount and character of the compensation to be paid for such work, or the sanitary or other conditions of the employment, or failure to state, in any advertisement, proposal or contract for the employment that there is a strike or lockout at the place of the proposed employment, when in fact such strike or lockout then actually exists in such employment at such place. Any of such unlawful acts shall be deemed a false advertisement, or misrepresentation for the purposes of this section."

Sub. 2 provides, upon conviction of a violation of sub. 1, for a punishment by a fine of not more than $2,000 or by imprisonment in the county jail not more than one year, or by both such fine and imprisonment. Sub. 3 provides for a civil remedy in damages, etc.

The statute being a criminal statute, it must be strictly construed. Such statutes are to be interpreted by the aid of all the ordinary rules for the construction of statutes and with the cardinal object of ascertaining the intention of the legislature. But if the acts alleged do not come clearly within the prohibition of the statute its scope will not be extended to other offenses than those which are clearly described and provided for; and if there is a fair doubt as to whether the act charged is embraced in the prohibition,

that doubt is to be resolved in favor of the defendant. 36 Cyc. 1183–1186.

In construing a statute the legislative intent is to be determined from a general view of the whole act, with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and it is a cardinal rule that effect is to be given, if possible, to every word, clause, and sentence. 36 Cyc. 1128.

If the legislature had intended the statute to apply to any strike at an employer's plant or place of business, regardless of whether it involved the particular craft for which employment is sought by the advertisement, it could have readily so declared. The construction herein indicated is the only logical one, particularly in view of the general rules of construction above set forth.

It is claimed by the plaintiff in error that no strike existed at the time of the advertisement in the employment in which the plaintiff in error advertised for help, and that therefore such advertisement does not come under the condemnation of said statute.

The learned counsel for the defendant in error contends that sub. 1 of said section of the statute contemplates a strike in and about the plant or premises of the employer, and is not confined to a strike of the particular craft in which by the advertisement an effort is made to hire help.

While the statute makes it an offense for an employer to advertise for help when there is a strike or lockout at the place of the proposed employment, when he fails to state in such advertisement that such strike or lockout exists, such general language is clearly modified by the subsequent language used, wherein it is stated, "when in fact such strike or lockout then actually exists *in such employment at such place*." "Such employment at such place" cannot mean any employment at the employer's place of business, but the particular employment for which the employer has advertised

for help.   It cannot be assumed, for instance, that the mere fact of the existence of a strike of electricians, carpenters, or other artisans on a given job will in any way affect a bricklayer seeking employment, when in fact no strike in this craft actually exists on the job.

We are then confronted with the question, Did a strike of the bricklayers exist on the job in question on or about the 29th of June, 1920?   The only testimony pertinent to the subject is that furnished by Charles J. Ebert, the business agent of the bricklayers' union.   He testified that on June 1st he asked one Herman Krenzin, a union bricklayer, to quit his job, and that on or about the 11th day of June two other union bricklayers, namely, Adam Stier and Simon Hazelbach, left the job.   These are the only instances from which any deduction can be drawn that prior to June 29th there was a strike of bricklayers at the place of employment of the plaintiff in error.

Prior to the time these three men left the employment there had been no dispute between them or any of them and the employer, and no demand or request had been made for a change in compensation or in labor conditions, nor was the employer called upon to exercise his right of acceding or refusing to accede to any demand of such employees.   The employer conducted what is known as an open shop, and did not therefore discriminate between union and non-union help; he did not even know the reason why the employees left, or that they were members of the bricklayers' union; nor was he notified of the fact that they were union men either by the men themselves or by any union or representative of a union.   In hiring bricklayers the employer fixed the hours of labor, the compensation, and the labor conditions, and the employees acceded to such terms by accepting the employment.   True, a notice had been sent to the plaintiff in error by the bricklayers' union stating that on and after June 1st the union bricklayers would only be permitted to work eight hours during any given day and that the rules

of the union prohibited work on Saturday afternoons, Sundays, and holidays. While there appeared to be no objection to the compensation paid by the employer, the number of hours included in a day's work was clearly not in accordance with the union rules as above stated. But the employer did not pretend to conduct a closed shop; on the contrary, it was well known that his business was conducted as an open shop. The very advertisement in question served notice upon prospective employees that the employer did not comply with the union rules. It also appears from the record that the number of bricklayers employed did not materially differ at the dates of the leaving of these men from any other days in that month.

Webster's New International Dictionary, on page 2058, defines the word "strike" as follows: "An act of quitting when done by mutual understanding by a body of workmen as a means of enforcing compliance with demands made on their employer." Numerous other definitions of the term "strike" appear in law dictionaries and decisions, all of which, however, substantially include the elements contained in the definition above set forth.

The number of men necessary to constitute a strike in refusing to continue work, pursuant to united effort, depends in each case upon the peculiar facts in the case, and no definite rule can be laid down. The legislature did not see fit to define the term "strike," but on the contrary used the term in the sense that it is ordinarily used in connection with labor troubles and as defined by standard authorities upon the subject. But it would appear quite clear that before the employer can be involved in any action of a labor union, with respect to the failure to do the things required by a statutory enactment like the one under consideration, it first becomes incumbent upon the members or representatives of such unions to make a demand upon the employer in order to lay the basis for a refusal. Such view is in harmony with the fundamental thought underlying the defini-

tion of a strike under the common acceptation of the term, and it logically follows that it is contemplated that a strike exists after the demands of employees are made and refused, as the result of which the employees are withdrawn from the employment.

Nothing herein stated shall be construed to deny to any employee or organization of employees the natural right to hire his services to any one he pleases, or from refraining from such hiring, nor can anything herein contained be construed to deny the right of the employer to determine whose services he will hire.

We therefore arrive at the logical and inevitable conclusion that under the evidence in the record it does not appear that a strike of bricklayers actually existed at the place of business of the plaintiff in error on June 29, 1920.

Counsel for the defendant in error also contend that the plaintiff in error was guilty of false and deceptive advertising by stating in the advertisement that there were no labor troubles. This contention is not based upon that portion of the statute referring to strikes or lockouts, but upon the prior provisions of the statute under which it is an offense, among other things, to induce a workman to accept employment through or by means of false advertising. Under the statute such false advertising refers to the kind and character of the work to be done, or the amount and character of the compensation to be paid for such work, or the sanitary or other conditions of the employment. Unless the phrase in the statute, "or other conditions," may be construed to refer to the existence of labor troubles, the contention of counsel for the defendant in error is not well founded. Such phrase can have reference only to such other conditions as are necessarily incident to and a part of the employment itself, as, for instance, the time when work shall begin in the morning, the length of time allowed for lunch, the time when employees shall be paid for their work, etc. The legislature has seen fit to in-

clude in the statute an express provision covering the subject of labor troubles, which is included in the strike provision, and, having specifically legislated upon the subject, it must be necessarily and logically inferred that in the use of the phrase "or other conditions" labor troubles were not included.

From the foregoing we conclude that the conviction of the plaintiff in error cannot be sustained, and the judgment of the lower court is therefore reversed.

*By the Court.*—It is so ordered.