STATE of Wisconsin, Plaintiff-Respondent,

v.

Dione Wendell HAYWOOD, Defendant-Appellant.

Court of Appeals

*No. 2009AP30–CR. Submitted on briefs November 3, 2009. —Decided November 24, 2009.*

2009 WI App 178

(Also reported in 777 N.W.2d 921.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert F. Haney* of *Podell, Ugent & Haney, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Dione Wendell Haywood appeals the judgment entered on a jury verdict convicting him of battery to a law-enforcement officer, *see* Wis. Stat. § 940.20(2), and from the circuit court's order denying his motion for postconviction relief.[1] This was his second trial on the charge. The first ended in a mistrial. Haywood contends that he is entitled to a discretionary reversal under Wis. Stat. § 752.35 because he asserts that the law-enforcement officer he is accused of battering was "not acting in his official capacity at the time he was battered by the defendant." (Capitalization omitted.) He also argues that he should be resentenced because he claims that the prosecutor "engaged in misconduct" during the sentencing hearing, and, additionally, that he is entitled to a hearing under *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), to determine whether his trial lawyer gave him ineffective representation at sentencing. We affirm.

---

[1] The pertinent documents in the Record refer to the defendant as Dione Wendell Haywood. He prefers, however, the first name of Edjuan, and was referred to by that name during the trial.

Haywood's notice of appeal mistakenly asserts that he also appeals "from . . . the postconviction motion dated December 2, 2008." First, Haywood's appeal is from the circuit court's *order denying* his motion, not from *the motion*. Second, the circuit court's order is *dated* December 1, 2008, although it was *filed* on December 2. We, obviously, ignore these silly errors, *see* Wis. Stat. Rule 805.18(1) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.") (made applicable to appellate procedures by Wis. Stat. Rule 809.84), but caution counsel to be more careful in the future.

The Honorable Mel Flanagan presided over Haywood's trial. The Honorable Thomas P. Donegan sentenced Haywood and denied his motion for postconviction relief.

# I.

¶ 2. The facts material to this appeal are simple. The officer whom Haywood was accused of battering, Gary Post, was working as a police officer for the City of Milwaukee, and was dressed in a standard police uniform that displayed a police badge when Haywood is accused of hitting him. Post testified that he was investigating a matter that concerned Haywood and during that investigation went to a house where the door was opened by a woman whom he knew from his earlier visits to the house in connection with that investigation. At the time, he did not know that Haywood was in the house. Post did not have either a search warrant or an arrest warrant.

¶ 3. Post followed the woman into the house, although he admitted on cross-examination that she never said "come on in." When she told him that she did not know where Haywood was, he asked her if he could search the house. The woman went upstairs to put on "some more clothes." When she came down, she handed him a note that told him to leave because he did not have a search warrant. When Post asked the woman, as he recalled it for the jury, "what's the all of a sudden change?" Haywood came "charging down the stairs." Post tried to arrest Haywood, but Haywood resisted and, according to Post, "was really angry."

¶ 4. Post told the jury that the struggle between him and Haywood "was getting worse and worse," and Post took out his pepper spray:

> He hit my hands and the canister came out of my hands, flew onto the ground, hit the wall and bounced right back towards me . . . . We were struggling around, and I reached down, while we were getting—while we were going back and forth. It was kind of a wild, dynamic time period here, but I was able to scoop down

696

and grab the spray, and I then directed the spray at him and proceeded to spray the pepper spray onto him.

This did not fix things, because, according to Post, "it seemed to escalate Mr. Haywood's anger."

He violently threw me back and then immediately grabbed [a] chair . . . and just reached it up, and when I seen [*sic*] that, I was like, oh, my God, and so I turned like this (indicating) to try to cover my head, and the chair came up and smashed onto the backside hitting my back, left scapula area and my arms and the back of my head, and it just knocked me down. I seen [*sic*] stars and it blacked me right out.

Haywood then fled but Post "got to him by the kitchen door, he was—he already had the door open, and then right when I was at the door, he slammed the door on to me, and he slammed it so hard that the storm door came right off the hinges." Haywood ran; Post did not follow. Post told the jury that during the fight with Haywood, "we were getting knocked around on the walls."

¶ 5. The defense did not call any witnesses, and Haywood did not testify. In the first trial, however, the woman who met Post at the door, Marline Nicholson, testified that Haywood did not hit Post with a chair or anything.

¶ 6. As we have seen, the jury convicted Haywood of battery to a law-enforcement officer. During its deliberations, it sent a note to the trial court. The note is not in the appellate Record, but the trial court read it: "[W]e all agree there was some harm done to the officer. However, we cannot agree that the chair was used during the alleged altercation. Therefore, are we trying the defendant solely on the use of the chair or not?" In deciding to "refer [the jury] back to the instruction with the legal definition of battery to law enforcement, and indicate that — to them that what they need

697

to find is what is listed in the elements of this offense, and that's all they need to find," the trial court observed:

> [T]he case is not constrained by the State's theory of the prosecution, it's constrained by the evidence, and the evidence was that there was a struggle, that they were, you know, moving around, hitting walls, and that they're — that beyond this point, he was knocked to the ground, and then a door was slammed on him.

Haywood's lawyer said that the trial court's answer to the jury's note was "reasonable." After Haywood's lawyer consulted with Haywood, the trial court repeated that it would "refer" the jury to the instruction on battery to a law-enforcement officer "and tell them that they're — what they need to review and discuss is whether they agree on the elements listed in this instruction as they're written, and that's what they decide, it's there or it's not there." Haywood's lawyer again agreed: "That sounds good."[2]

---

[2] The trial court's original instruction to the jury on the battery-to-a-law-enforcement-officer charge was, as material:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following six elements were present.

> One, the defendant caused bodily harm to Police Officer Gary Post.

> Caused means the defendant's conduct was a substantial factor in producing bodily harm.

> Bodily harm means physical pain or injury, illness, or any impairment of the physical condition.

> Two, Police Officer Gary Post was a law enforcement officer. A police officer is a law enforcement officer.

> Three, Police Officer Gary Post was acting in an official capacity.

> Police officers act in an official capacity if they perform duties that they are employed to perform.

¶ 7. The trial court sentenced Haywood to impris-
onment for four years, made up of two years of initial
confinement followed by two years of extended super-
vision. At the sentencing hearing, the prosecutor ex-
pressed the State's view that Haywood had battered
Post with a chair. Officer Post also addressed the circuit
court during the sentencing hearing:

> This is a very violate [*sic* — "violent"?] situation
> that occurred to me. It was very — When the act
> happened and I was knocked to the ground, I believed I
> was going to be killed, and it was a very frightening
> thing for me. And luckily I was not seriously injured,
> but the potential was very, very high — with the
> mechanism of his attack. So with all that, I just hope
> that he would be put in prison to protect society.

¶ 8. Haywood's lawyer told the circuit court that
Haywood denied hitting Post with a chair and, in an
apparent reference to Nicholson's testimony at the first
trial, also said that "[t]he witness also denies that."
During his allocution, Haywood flat out told the circuit
court that he did not hit Post with a chair or at all.
Nicholson appeared at the sentencing hearing, and told
the circuit court that Haywood did not hit Post with a
chair.

---

Four, the defendant knew or had reason to know that Police
Officer Gary Post was a law enforcement officer acting in a[n]
official capacity.

Five, the defendant caused bodily harm to Police Officer Gary
Post without the consent of Police Officer Gary Post.

Six, the defendant acted intentionally. This requires that the
defendant acted with a mental purpose to cause bodily harm to
Police Officer Gary Post and knew that Police Officer Gary Post
did not consent.

Haywood's lawyer did not object to this instruction.

¶ 9. In explaining its sentencing rationale, the circuit court noted that Haywood was convicted of "battery to a law enforcement officer" and that this was "a very serious offense." In referencing the chair, the circuit court opined:

> It was clear from [Haywood's] statements here at sentencing as well as from [Nicholson]'s statements that each of them feel [*sic*] the jury was wrong, that he did not do a throwing of a chair or the abuse of the officer that the jury found he was guilty of. Each fact they found that they did find him guilty of battery to a law enforcement officer.

## II.

A. *Discretionary reversal under WIS. STAT. § 752.35.*

██

¶ 10. As we have seen, Haywood argues that he is entitled to a discretionary reversal under WIS. STAT. § 752.35. That section provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

He complains that the trial court improperly did not tell the jury, or permit his lawyer to tell the jury, that if Officer Post was unlawfully in the house after Nicholson

700

told him to leave, the officer was not acting in his "official capacity," as is required by the battery-to-a-law-enforcement-officer statute, WIS. STAT. § 940.20(2), which, as material, makes it a crime for someone to "intentionally cause[] bodily harm to a law enforcement officer . . . acting in an official capacity."

██

¶ 11. The flaw in Haywood's contention, however, is that a law-enforcement officer need not be acting "lawfully" for what he or she does to be done in the officer's "official capacity." Rather, the officer need only be acting within his or her jurisdiction *as an officer, State v. Barrett*, 96 Wis. 2d 174, 180, 291 N.W.2d 498, 500–501 (1980), and not on some "personal frolic" unrelated to the officer's law-enforcement responsibilities, *State v. Schmit*, 115 Wis. 2d 657, 665, 340 N.W.2d 752, 756 (Ct. App. 1983) (inner quotation marks and quoted source omitted). The confluence of *Barrett* and *Schmit* are instructive.

██

¶ 12. First, as we see from WIS. STAT. § 940.20(2), there is no requirement that the officer/victim be acting lawfully when he or she is hit by a defendant. "[T]he existence of a peace officer's lawful authority is an element of the crime of resisting or obstructing an officer under sec. 946.41, Stats.[3] It is not an element of the crime of battery to a peace officer." *Barrett*, 96 Wis. 2d at 181, 291 N.W.2d at 501 (footnote added). In *Barrett*, a sheriff's deputy was outside his county when he arrested a person for obstructing an officer, and the person then hit the deputy. *Id.*, 96 Wis. 2d at 176–177, 291 N.W.2d at

---

[3] As material, WIS. STAT. § 946.41(1) makes it unlawful to "knowingly resist[] or obstruct[] an officer while such officer is doing any act in an official capacity and with *lawful authority*." (Emphasis added.)

499. *Barrett* held that because the deputy was outside of his jurisdiction he "had no legal right . . . to perform any police functions" in the county where he arrested the defendant. *Id.*, 96 Wis. 2d at 179, 291 N.W.2d at 500 (internal quotation marks and quoted source omitted); *see also id.*, 96 Wis. 2d at 180, 291 N.W.2d at 500 ("The deputy sheriff in this case was not performing any of the duties conferred upon him as a deputy sheriff [of his county] when he questioned the defendant in [the other county]."). *Barrett* held that an officer is acting in his or her "official capacity" when the officer is doing something "within the scope of what the [officer] is employed to do." *Ibid.* (Quotation marks and quoted source omitted.) Thus, the deputy in *Barrett* was not acting in his official capacity when the defendant in that case hit him because the deputy was not doing something within the scope of what the deputy was employed to do. *Id.*, 96 Wis. 2d at 182, 291 N.W.2d at 501–502.

¶ 13. In *Schmit*, a prison guard was accused of misconduct in public office in violation of WIS. STAT. § 946.12(2), which made it unlawful for, as material, "[a] public officer or public employe [*sic*] to . . . [i]n his capacity as such officer or employe [*sic*], do[] an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity," *Schmit*, 115 Wis. 2d at 659, 340 N.W.2d at 754 (emphasis omitted), by having consensual sex with an inmate in the institution at which she was employed, *id.*, 115 Wis. 2d at 658–659, 340 N.W.2d at 753.[4] Upholding the trial court's dismissal of the charge, *Schmit* opined that the statute "requires both that the officer *commit* the act in an official capacity, and that the act be one which he is *forbidden by law to do* in an official

---

[4] WISCONSIN STAT. § 946.12(2), as it now reads, makes it unlawful for a "public officer or public employee" to:

capacity." *Id.*, 115 Wis. 2d at 660, 340 N.W.2d at 754 (emphasis in original). Since, as noted, *Schmit* held that because what the officer did was a mere "personal frolic," she did not violate the statute. *Id.*, 115 Wis. 2d at 665, 340 N.W.2d at 756 (inner quotation marks and quoted source omitted).

¶ 14. Here, in contrast to both *Barrett* and *Schmit*, Officer Post was not on a "personal frolic" when Haywood hit him, but rather, was doing something "within the scope of what [Post] is employed to do." Accordingly, Haywood's contention that the lawfulness of Post's presence in the house where Haywood hit him was material to his violation of Wis. Stat. § 940.20(2) is without merit. Therefore, he is not entitled to discretionary reversal under Wis. Stat. § 752.35.

B. *Alleged prosecutorial misconduct at sentencing.*

¶ 15. The crux of Haywood's complaint about what the prosecutor did at sentencing is this assertion in his main brief on this appeal:

> [T]he State actively mislead the sentencing court by stating that the jury found the defendant guilty of injuring the officer with the chair, and passively mislead the sentencing court by remaining silent during the colloquy between the defendant and the court regarding question [*sic*] the jury raised about the use of the chair during the battery.

We will address these contentions in turn. We note first, however, that a reversal is only warranted for alleged

In the officer's or employee's capacity as such officer or employee, do[] an act which the officer or employee knows is in excess of the officer's or employee's lawful authority or which the officer or employee knows the officer or employee is forbidden by law to do in the officer's or employee's official capacity.

703

prosecutorial misconduct when what the prosecutor does has "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498, 501 (Ct. App. 1992) (internal quotation marks and quoted source omitted). Although *Wolff* concerned statements made to a jury during trial, neither party has referred to any Wisconsin authority, and we have found none, that specifically deals with allegations of prosecutorial misconduct at sentencing outside of the breach-of-plea-bargain context. Accordingly, we believe that the *Wolff* test applies here. Further, Haywood did not object to what the prosecutor did, and this forfeits his right to have review other than in an ineffective-assistance-of-counsel context. *See State v. Davidson*, 2000 WI 91, ¶ 86, 236 Wis. 2d 537, 578–579, 613 N.W.2d 606, 625–626 (failure to move for a mistrial waives any claimed error stemming from alleged prosecutorial misconduct during closing arguments); *State v. Carprue*, 2004 WI 111, ¶ 47, 274 Wis. 2d 656, 678, 683 N.W.2d 31, 41–42 (failure to object means alleged error must be analyzed under an ineffective-assistance-of-counsel rubric).[5]

¶ 16. To establish ineffective assistance of counsel, a defendant must show: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of profes

---

[5] We use the word "forfeiture" consistent with the terminology adopted by *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 670, 761 N.W.2d 612, 620 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks and quoted source omitted).

sionally competent assistance." *Id.*, 466 U.S. at 690. To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the *Strickland* analysis, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. We now turn to Haywood's contentions.

i. *Alleged "active" misrepresentation.*

¶ 17. Contrary to the representation in Haywood's brief, the prosecutor *did not* tell the circuit court that, as phrased by Haywood's brief, "the jury found the defendant guilty of injuring the officer with the chair." Rather, she told the circuit court:

> The officer hears foot steps running down the stairs, runs into the kitchen where the officer is, and picks up a chair which is — It was a metal chair, heavier than one of these, but kind of one of these that are in the back of the courtroom. A metal chair. And he picks it up and strikes the officer over the head with it. That stuns and knocks the officer down to the floor. At this point the officer really thinks he is going to be — a beating is going to continue.

This was wholly fair comment about what the *uncontradicted evidence at the trial proved* because the only version of the incident the jury heard was Officer Post's testimony. Although it is true that Nicholson had testified at the first trial that Haywood did not hit Post, she did not testify at the second trial, and neither did

705

Haywood. As we have seen, however, both Haywood and Nicholson told the circuit court at sentencing that Haywood did not hit Post with a chair, as did Haywood's lawyer. There was no "active" misrepresentation by the prosecutor at Haywood's sentencing. Accordingly, Haywood's lawyer did not give him ineffective assistance by not objecting to what the prosecutor said or did not say.

ii. *Alleged "passive" misrepresentation.*

¶ 18. Haywood's appellate briefs fault the prosecutor for not telling the circuit court during the sentencing hearing that the jury sent a note to the trial court during its deliberations indicating that it was split over whether Haywood had or had not hit Post with a chair, even though it did tell the trial court that the jurors "all agree there was some harm done to the officer." As we have seen, however, the circuit court heard from both Haywood and Nicholson at the sentencing hearing, as well as from Post. Haywood does not explain what additional weight the jury's note would have added to the sentencing mix, especially in light of the note's assertion that the jury was unanimous in finding that "there was some harm done to the officer." Moreover, a sentencing court is not bound by a jury's view of the facts, if the jury returns a guilty verdict on any charge. *See State v. Arredondo*, 2004 WI App 7, ¶ 54, 269 Wis. 2d 369, 404–405, 674 N.W.2d 647, 663. Assuming without deciding that Haywood's lawyer was wrong in either not objecting to the prosecutor's failure to tell the circuit court at the sentencing hearing about the jury's note or not telling the circuit court about the note herself, there was no *Strickland* prejudice.

## C. *Alleged need for a Machner hearing.*

¶ 19. This claim is based on Haywood's contention that the lawyer who represented him at sentencing did not say enough about the chair matter during sentencing. This is how he phrases it in his main brief on this appeal: "[C]ounsel stood mute during the discussion of the jury's question regarding the use of the chair" and, also, she both failed "to speak on behalf of the defendant" and "to object to the State's characterization about the findings of the jury as well." This, as we have already seen, is both inaccurate and unsupported hyperbole. First, Haywood's lawyer *did* tell the circuit court at sentencing that Haywood denied hitting Post with a chair. Second, as we have also already seen, the prosecutor never told the circuit court that the jury had found as a fact that Haywood had used a chair to hit Post. Thus, we have already addressed the alleged ineffectiveness of Haywood's lawyer at sentencing in the context of the chair matter. Haywood has not shown that a *Machner* hearing was warranted because the Record conclusively shows that Haywood's lawyer did not give him ineffective representation at sentencing. *See State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 576–577, 682 N.W.2d 433, 437 (Circuit court has discretion to deny a postconviction motion for a *Machner* hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.").

¶ 20. We affirm.

*By the Court.*—Judgment and order affirmed.